## UNITED STATES v. CLARKE.

*(District Court, E. D. Missouri, E. D.	April 16, 1889.)*

1. OFFENSES AGAINST POSTAL LAWS—OBSCENE MATTER—INDICTMENT.
    An indictment charged defendant with depositing in the post-office for mailing "a certain obscene, lewd, and lascivious pamphlet, of an indecent character," giving its title, and alleged that it "is so obscene, lewd, and lascivious" that it would be offensive if set forth in full. *Held*, that a demurrer on the grounds that the pamphlet was not obscene, and that, if unfit for general circulation, it might lawfully be sent to certain persons, to whom the indictment did not show that it was mailed, could not be sustained, as the pamphlet could not be regarded as part of the record, and therefore those questions could not be considered.
2. SAME—MEANING OF WORDS—REV. ST. U. S. § 3893.
    The words "obscene," "lewd," "lascivious," and "indecent," as used in Rev. St. U. S. § 3893, prohibiting the deposit of publications so described in the mails, have the same meaning as given them at common law in prosecutions for obscene libel.
3. SAME—INDICTMENT—DEFENSES.
    As the statute contains no exceptions to the rule making obscene publications non-mailable, the fact that a publication which would ordinarily be classed as within its meaning might lawfully be sent to certain persons, does not render it necessary to aver in the indictment that it was not sent to such persons, it being matter of defense to show that it was sent to such persons.
4. SAME—PROVINCE OF COURT AND JURY.
    The question whether or not a particular publication is obscene, lewd, or lascivious is for the jury, under instructions from the court as to the meaning of the words.

At Law.	On demurrer to indictment.

Frank D. Clarke was indicted under Rev. St. U. S. § 3893, as amended by act Cong. Sept. 26, 1888, (25 U. S. St. at Large, 496.)	He demurs to the indictment.

*Thomas P. Bashaw*, Dist. Atty.

*Chester H. Krum*, for defendant.

THAYER, J.	The indictment in this case is in the usual form. One of the counts, which may be taken as a sample of all, alleges that the defendant knowingly deposited for mailing in the post-office at the city of St. Louis, a certain obscene, lewd, and lascivious pamphlet of an indecent character, entitled, "Dr. Clarke's Treatise on Venereal, Sexual,

Nervous, and Special Diseases," which was addressed to "Mr. W. E. Deer, Bluff Mills, Indiana," and is so obscene, lewd, and lascivious that said pamphlet would be offensive if set forth in full in the indictment. Defendant demurs to the indictment on the ground—*First*, that the pamphlet is not obscene; and, *secondly*, on the ground that, even if it is unfit for general circulation, yet that it may be lawfully sent through the mails to certain persons, and that the indictment is defective because it does not show by proper averments that the publication was not mailed to such persons. The demurrer, therefore, assumes that the publication in question is a part of the record, and that the court may properly determine on demurrer whether it is or is not obscene. This position I regard as untenable. The practice now become common in this class of cases, of describing a publication in an indictment in such manner that it may be identified, and averring that it is obscene,—so obscene that it is unfit to be spread on the record,—was adopted originally, in part at least, for the purpose of preventing obscene and indecent matter from becoming a part of a permanent public record. The practice was justified on that ground in the case of *Com.* v. *Holmes*, 17 Mass. 337. As the alleged obscene publication cannot be regarded as a part of the record, it is manifest that it is not touched by the demurrer. The question whether it is obscene in such sense as to be non-mailable under any and all circumstances, or whether it might be mailed to some persons, is not before the court for determination at this time. The reason last assigned for overruling the demurrer was not suggested at the hearing, and apparently was not relied upon by the district attorney.

The discussion took a wide range. The publication complained of was exhibited to the court, and contrasted with a certain standard medical journal, and much was said on the point whether the publication was obscene in the sense of the common law, and whether common-law tests of obscenity are applicable to the case, and as to whether the non-mailable character of the publication depends to any extent upon the person, or class of persons, to whom it was addressed. In view of the discussion at the hearing of the demurrer, and the fact that the case remains to be tried, it will not be out of place to express an opinion on some of these points. In the first place, I remark that the words "obscene," "lewd," "lascivious," and "indecent," as used in the federal statute, section 3893, as amended by act Sept. 26, 1888, (25th St. at Large, p. 496,) have the meaning that have been imputed to them at common law in prosecutions for publishing obscene libels. Whether a particular publication is obscene, and for that reason unmailable, must be determined by common-law tests. At this point, however, arises the question whether it is the province of the court or jury to determine with respect to a given publication if it is obscene or otherwise. I am of the opinion that the ultimate solution of that question rests with the jury to the same extent that in civil prosecutions for libel, and in criminal prosecutions since the declaratory act of the 32 Geo. III. c. 60, the question whether an article is libelous is for the jury, under proper directions given by the court. *Parmiter* v. *Coupland*, 6 Mees. & W. 105;

*Baylis* v. *Lawrence*, 11 Adol. & E. 920; 3 State Tr. 37; *Moxon's Case*, 2 Towns. St. Tr. 356; Starkie, Sland. & Lib. (Wood's Notes) §§ 556 and 195. The court must of course define the terms "obscene," "lewd," and "lascivious" as used in the statutes, and may no doubt express its opinion as to whether the publication complained of is indecent, but in the end the jury must find whether the publication, by reason of its effect upon the minds of those into whose hands it may fall, is obscene or otherwise, within the definition given by the court. Entertaining the view that the question whether a publication is obscene, is generally for the jury, under proper directions from the court, I am free to say that if the pamphlet complained of in this case had been set out in the indictment, so as to form part of the record, I should not feel authorized to declare on demurrer that it is not indecent or obscene. The publication is of such a peculiar character that, in my judgment, both the government and the defendant are entitled to the opinion of the jury as to whether it would probably deprave and corrupt the minds of those into whose hands the pamphlet might fall; that is to say, whether it is obscene or otherwise. The views that different persons might entertain of the tendency and effect of such publications are so various that these questions ought to be submitted to a jury. It was urged that the court ought at least to presume from an inspection of the pamphlet that the author's motives were laudable; that his purpose was to benefit, rather than to debauch, the public. But, even conceding this to be so, it will not benefit the defendant, if his pamphlet is found to be in fact indecent or obscene, as it was expressly held in the somewhat celebrated case of *Queen* v. *Hicklin*, L. R. 3 Q. B. 371, that the character of a publication as obscene or otherwise is not to be determined by the motives of the author in making the publication. In the case of *U. S.* v. *Chesman*, 19 Fed. Rep. 497, Judge McCRARY said:

"There are many things contained in the standard works, (upon medicine,) which, if printed in pamphlet form, and spread broadcast among the community, being sent through the mail to persons of all classes, including boys and girls, would be highly indecent and obscene."

A very similar remark was made by COCKBURN, C. J., in *Queen* v. *Hicklin*, L. R. 3 Q. B. 367, *supra.* I do not understand from this language, however, that the character of a publication, whether obscene or otherwise, is to be determined by other *criteria* than its subject-matter, the method of treatment of the subject involved, the illustrations it contains, and its tendency, in all these respects, to corrupt those whose minds are open to immoral influences. The inference to be drawn from what was said in the two cases last cited appears to me to be this: that even an obscene book, or one that, in view of its subject-matter, would ordinarily be classed as such, may be sent through the mail, or published, to certain persons, for certain purposes. For example, a treatise on venereal diseases might be sent through the mail, or delivered to a student or practitioner of medicine, and perhaps to other persons, for certain purposes. But if an obscene book is deposited in the mail, addressed to a certain person, it is not necessary to allege in an indictment for such an act that

the person to whom it was addressed was not one of those persons, or did not belong to a class of persons to whom such books might lawfully be sent by mail. If it be a fact that the defendant in any case was justified in sending what would ordinarily be deemed an indecent publication through the mail, by reason of the calling, profession, or peculiar need of the person to whom it was sent, that is a matter of defense to be brought forward by the defendant, and he may do so on a plea of not guilty. Such a defense need not be anticipated by any negative averments in the indictment, as it is not a case in which a pleader, in stating an offense, is required to negative exceptions contained in the enacting clause of the statute declaring the offense.

Section 3893 contains no exceptions. Obscene publications are declared to be non-mailable matter. If for any reason, or under any circumstances, that which is indecent is deposited in the mail, the defendant should be required to establish the facts or circumstances, if there be any, which render the act justifiable. The rule on this subject is well illustrated in the case of *Rex* v. *Vantandillo*, 4 Maule & S. 73; 1 Chit. Crim. Law, 231, 283, 284. Matters purely defensive need not be anticipated in an indictment. In the case of *U. S.* v. *Carll*, 105 U. S. 611, to which allusion was made on the argument, the court held that the word "knowingly" was to be implied or interpolated into the statute, (section 5431,) and accordingly ruled that an indictment under that section, which did not allege that the obligation uttered was known to be counterfeit, stated no offense. I cannot see that that decision has any application to the case at bar. For the reason first assigned the demurrer is overruled.