## UNITED STATES v. KENNERLEY.

(District Court, S. D. New York. December 1, 1913.)

INDICTMENT AND INFORMATION (§ 150*)—DEMURRER—PROSECUTION FOR MAILING OBSCENE MATTER—QUESTION FOR JURY.

In a prosecution under Cr. Code (Act March 4, 1909, c. 321, 35 Stat. 1129) § 211, as amended by Act March 4, 1911, c. 241, § 2, 36 Stat. 1339 (U. S. Comp. St. Supp. 1911, p. 1651), for sending an obscene book through the mails, whether or not the book is obscene must be determined by the jury under instructions, and the court on demurrer, even when the book is stipulated into the record as a part of the indictment, has power only to decide whether it is so clearly innocent that the jury should not pass on it at all. Rule in Regina v. Hicklin, L. R. 3 Q. B. 36, disapproved.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 497; Dec. Dig. § 150.*]

Criminal prosecution by the United States against Mitchell Kennerley. On demurrer to indictment. Overruled.

Demurrer to an indictment found under section 211 of the Criminal Code against the publisher of a book, entitled "Hagar Revelly," alleged to be obscene. The book is a novel of manners presenting the life of a young woman in New York compelled to earn her living. She is represented as impulsive, sensuous, fond of pleasure, and restive under the monotony and squalor of her surroundings. Her virtue is unsuccessfully assailed by a man she does not love and later successfully by one whom she does. After her seduction she has several amorous misadventures and ends with a loveless marriage and the prospect of a dreary future. In order to give complete portrayal to the girl's emotional character, some of the scenes are depicted with a frankness and detail which have given rise to this prosecution.

John Neville Boyle, of New York City, for the United States.
John L. Lockwood, of New York City, for defendant.

HAND, District Judge (after stating the facts as above). It seems to have been thought in U. S. v. Bennett, 16 Blatch. 338, 351, Fed. Cas. No. 14,571, that in an indictment of this sort the question whether the case must go to the jury could be raised in advance of the trial by inspection of the book, after it had been made a part of the record, by bill of particulars. However, in Dunlop v. U. S., 165 U. S. 486, 491, 17 Sup. Ct. 375, 376 (41 L. Ed. 799), the Supreme Court said that the book does not ever become a part of the record, and that therefore, "if the indictment be not demurrable upon its face, it would not become so by the addition of a bill of particulars." The same rule is laid down in U. S. v. Clarke (D. C.) 38 Fed. 500. It is a little questionable in my mind whether Mr. Boyle's consent that the book should be considered as a part of the indictment really effects any more than if it had been produced by bill of particulars. However, as the result from any point of view is the same, I have considered the case as though the book had been set out in extenso.

Whatever be the rule in England, in this country the jury must determine under instructions whether the book is obscene. The court's only power is to decide whether the book is so clearly innocent that the jury should not pass upon it at all. U. S. v. Clarke (D. C.) 38 Fed. 500; U. S. v. Smith (D. C.) 45 Fed. 478. The same question arises as would arise upon motion to direct a verdict at the close of the case. Swearingen v. U. S., 161 U. S. 446, 16 Sup. Ct. 562, 40 L. Ed. 765, did not decide that the court is finally to interpret the words, but that matter was left open, because the instructions in any case misinterpreted the statute. The question here is, therefore, whether the jury might find the book obscene under proper instructions. Lord Cockburn laid down a test in Reg. v. Hicklin, L. R. 3 Q. B. 36, in these words:

"Whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences and into whose hands a publication of this sort may fall."

That test has been accepted by the lower federal courts until it would be no longer proper for me to disregard it. U. S. v. Bennett, 16 Blatch. 338, Fed. Cas. No. 14,571; U. S. v. Clarke (D. C.) 38 Fed. 500; U. S. v. Harmon (D. C.) 45 Fed. 414; U. S. v. Smith (D. C.) 45 Fed. 478. Under this rule, such parts of this book as pages 169 and 170 might be found obscene, because they certainly might tend to corrupt the morals of those into whose hands it might come and whose minds were open to such immoral influences. Indeed, it would be just those who would be most likely to concern themselves with those parts alone, forgetting their setting and their relevancy to the book as a whole.

While, therefore, the demurrer must be overruled, I hope it is not improper for me to say that the rule as laid down, however consonant it may be with mid-Victorian morals, does not seem to me to answer to the understanding and morality of the present time, as conveyed by the words, "obscene, lewd, or lascivious." I question whether in the end men will regard that as obscene which is honestly relevant to the ade-

quate expression of innocent ideas, and whether they will not believe that truth and beauty are too precious to society at large to be mutilated in the interests of those most likely to pervert them to base uses. Indeed, it seems hardly likely that we are even to-day so lukewarm in our interest in letters or serious discussion as to be content to reduce our treatment of sex to the standard of a child's library in the supposed interest of a salacious few, or that shame will for long prevent us from adequate portrayal of some of the most serious and beautiful sides of human nature. That such latitude gives opportunity for its abuse is true enough; there will be, as there are, plenty who will misuse the privilege as a cover for lewdness and a stalking horse from which to strike at purity, but that is true to-day and only involves us in the same question of fact which we hope that we have the power to answer.

Yet, if the time is not yet when men think innocent all that which is honestly germane to a pure subject, however little it may mince its words, still I scarcely think that they would forbid all which might corrupt the most corruptible, or that society is prepared to accept for its own limitations those which may perhaps be necessary to the weakest of its members. If there be no abstract definition, such as I have suggested, should not the word "obscene" be allowed to indicate the present critical point in the compromise between candor and shame at which the community may have arrived here and now? If letters must, like other kinds of conduct, be subject to the social sense of what is right, it would seem that a jury should in each case establish the standard much as they do in cases of negligence. To put thought in leash to the average conscience of the time is perhaps tolerable, but to fetter it by the necessities of the lowest and least capable seems a fatal policy.

Nor is it an objection, I think, that such an interpretation gives to the words of the statute a varying meaning from time to time. Such words as these do not embalm the precise morals of an age or place; while they presuppose that some things will always be shocking to the public taste, the vague subject-matter is left to the gradual development of general notions about what is decent. A jury is especially the organ with which to feel the content comprised within such words at any given time, but to do so they must be free to follow the colloquial connotations which they have drawn up instinctively from life and common speech.

Demurrer overruled.