Per Curiam.

The defendants BucHey and Goldstein, as publishers and editors, and the defendant Balan, as printer, are charged with violating section 235.05 of the Penal Law, in that they did engage and did aid and abet the publishing, composition, distribution and dissemination of obscene material, to wit, Volumes 14, 15, 17, 22, 23 and 24 of a tabloid-type magazine entitled Screw. These volumes are designated as People’s Exhibits Nos. 2, 3, 4, 5, 6 and 7 respectively. The charge against Balan covers only People’s Exhibits No. 2 and No. 3 (vols. 14 and 15).
It was conceded that this magazine, consisting of 28 pages each, was openly displayed for sale on numerous newsstands *918 throughout this city. The format of the publication reveals the name Screw in large colored letters on a background of different colors covering the top of the cover page. Underneath appears the legend “ The Sex Review ”, and at the bottom, the additional legend, “ Warning. Adult Type Sex Material, etc.” The masthead of these publications lists such titles as “ Smut • Peddlers ” and “ Schlock Meisters ” while a female member of the publication’s staff is denominated as the “Pussy Power Potentate ’ ’.
The publication contains lurid drawings, phallic oriented cartoons and pictures of nudes of both sexes. Some depict heterosexual and homosexual acts. Commercial advertisements pertaining to sexual material such as dildoes, and personal advertisements soliciting partners for all types of sexual activities are published in each issue. A variety of articles and editorials are included, ranging from book reviews to instructions on how to perform acts of anal sodomy to gain maximum gratification.
As stated on the front cover, these magazines purport to be sex reviews, and sex is the dominant theme. Only books and motion picture films dealing with sex are reviewed. The book review section bears the heading “ Fuckbooks The motion picture films are rated by a “ Peter Meter ”, a drawing of a penis superimposed upon a scale, which rates the film, being reviewed, according to the percentage of erection induced by viewing the motion picture. Four letter'words — “ dirty” words — are sprinkled generously throughout.
The publisher’s avowed purpose, in disseminating this magazine, is to shatter the fetters, which, they assert, inhibit individuals from fully enjoying sex in all its varied and manifold forms. They claim that most persons are hypocrites when discussing sex and when indulging in sexual activity. This treatment of sexual matters — airing it — so it is claimed, is for the public good.
The court is persuaded that no element of pandering is involved in the sale and distribution of these magazines, such as was condemned in Ginzburg v. United States (383 U. S. 463). These magazines, whose cover boldly proclaims its appeal to sex, aré openly displayed for sale, and may be freely purchased. This, in and of itself, does not constitute “ pandering ” within the purview of Ginzburg. (See Redrup v. New York, 386 U. S. 767.)
Nor is there any claim of deliberate sales to minors (Redrup v. New York, supra). That some of these issues may ultimately be found in the possession of juveniles, is not nroof that the *919 sales pitch is directed at the juvenile market. In fact, the legend on the covers attempts to prohibit sales to minors.
Additionally, there is no evidence that these magazines have been foisted upon an unwilling public, or an unwilling individual, in violation of his right to privacy (Redrup, ibid.).
Section 235.05 of the Penal Law adopted the Federal rule enunciated in Memoirs v. Massachusetts (383 U. S. 413 the Fcmny Hill case) and elaborated in Redrup v. New York (supra) which holds that in determining whether material is obscene the court must find that “ three elements must coalesce: * * * (a) the dominant theme of the material taken as a whole appeals to prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value ” (Memoirs, supra, p. 418) (People v. Stabile, 58 Misc 2d 905).
The People urge that the obscenity rule laid down in Fanny Hill (supra), which refers to a “ book ”, is not applicable since the material here in question is a magazine. It is contended that a magazine is comprised of various bits of miscellany, unrelated to each other and without unity of thought or content usually associated with a book. Therefore, the test of taking the questioned material as a whole is inapplicable since there is no “whole” but disjointed pieces, each of which must be judged separately. ' The court is constrained to reject this argument. A book is a bound or loose leaf work of literary, or printed, or written material -(American College Dictionary [Random House]). Books, too, may consist of various treatises,, essays, verse, and even pictures and photographs totally unrelated to each other. These separate items which may be unrelated to each other in the questioned magazines are the “ whole ” to which Fanny Hill test must be applied. Within the meaning of Fanny Hill we hold that books and magazines are equated.
The court is persuaded, and defendant Goldstein concedes, that much of the material included in the magazine affronts and violates existing community standards.
It might be noted in passing that defendants’ “expert” witnesses were for the most part unpersuasive. For example, a defense psychologist testified that “42nd Street movies” depicting sexual intercourse did not appeal to prurient interest in sex, but that lingerie ads in the New York Times did.
However, another critical question which must also be resolved is — are the magazines “ utterly without redeeming social value ”? (Memoirs, p. 418, italics supplied.)
*920 The issue that must be resolved is whether the sprinkling of articles which are not obscene (and there are some) give the questioned magazines a status which prevents them from being condemned as “utterly without redeeming social value.” In other words, are -the former a mere cloak to hide the latter? (United States v. 35 mm Color Motion Picture Film, 432 F. 2d 705, 712.)
Vile language (Grove Press v. Christenberry, 276 F. 2d 433; Flying-Eagle Pubs. v. United States, 273 F. 2d 799, 803) or hateful ideas (Roth v. United States, 354 U. S. 476, 487) are in and of themselves, not a sufficient basis for proscribing a book as obscene.
On the other hand, lofty motives are no defense against a violation of law (Matter of Cavanagh v. Galamison, 31 A D 2d 635, 636).
Nor can the court weigh the “good” material against the “ obscene ” material in making a determination as to redeeming social value. As Fanny Hill (Memoirs, supra, pp. 418-419) says, the publication must be considered as a whole, and the aforesaid three tests must “be applied independently”.
Bedrup has added three additional tests for obscenity to the threefold test enunciated in Fanny Hill (supra). Mishkin v. New York (383 U. S. 502) has added a fourth test. As this court pointed out in People v. Stabile (58 Misc 2d 905, supra) Bedrup applies to those cases where the question of obscenity is close. In determining the presence or absence of obscenity in those “ close ” cases, evidence of the existence of any of the three Bedrup tests or of the Mishkin test, is required. (See also Shinall v. Worrell, 319 F. Supp. 485.) To this group of criteria, relating to “ close cases ” we add another test: where the material by publication solicits sexual activity between parties, more especially deviate sexual activity, in violation of the provisions of a penal statute.
An examination of the magazines before us discloses that they all contain advertisements for articles or devices and materials pertaining to sex and alleged sexual gratification. The publishers themselves loudly and proudly proclaim that matters dealing with sex, in. all its forms, is what they are seeking to publicize. The sale of the varied sex articles and devices, and particularly those devices known as “ dildoes ”, has been held to constitute prohibited “ obscene material ” within the purview of subdivisions 1 and 2 of section 235.00 of the Penal Law (People v. Clark, 60 Misc 2d 1073; United States v. Gentile, 211 F. Supp. 383). Advertisements, both graphic and written *921 (both are contained in the accused material) offering for sale such articles and devices also constitute “ obscene material ” within the ambit of the laws’ prohibitions and are violative of such laws for the reasons stated in People v. Clark (ibid.).
Further, pages 26-27 of each of the issues in evidence contain “ personal ” advertisements soliciting sexual relations, acts of sodomy, and wife-swapping orgies. The “ leer of the sensualist ’ ’ pervades throughout all of these exhibits.
First Amendment freedoms are not absolute. (Schenck v. United States, 249 U. S. 47; Beauharnais v. Illinois, 343 U. S. 250, 256; United States v. Roth, 237 F. 2d 796, 802, n. 5; Feiner v. New York, 340 U. S. 315.) As Mr. Justice Jackson said in Board of Educ. v. Barnette (319 U. S. 624, 633).
It is “a commonplace that censorship or suppression of expression of opinion is tolerated by our Constitution only when the expression presents a clear and present danger of action of a kind the State is empowered to prevent and punish.”
Surely, it cannot be seriously contended that advertisements such as “ Gun for hire — murders executed at reasonable prices — absolute discretion assured,” or “ save money on late model cars — we steal cars to your specifications,” would come within the umbrella of protection of freedom of the press.
Likewise, the personal advertisements- appearing in the exhibits before us, which solicit acts in violation of our Penal Law, enjoy no First Amendment protection.
Although fornication is no longer a crime in this 'State, consensual sodomy is a crime (Penal Law, § 130.38). Soliciting acts of sodomy is also violative of our Penal Law (Penal Law, § 100.00), as is adultery (Penal Law, § 255.17).
Such open and notorious solicitation of acts in violation of our Penal Law come within the definition of obscenity enunciated in both Memoirs v. Massachusetts (383 U. S. 413, supra) and Redrup v. New York (supra).
They appeal to prurient interest in sex, are patently offensive, violative of community standards and are utterly without redeeming social value. (Penal Law, § 235.00). Such advertising, together with that soliciting the purchase of the aforesaid sex articles and devices certainly go substantially beyond “ the present critical point in the compromise between candor and shame at which the community may have arrived here and now” (United States v. Kennerley, 209 F. 119, 121), and degenerates to illegality the entire publication, coloring also with the brush of obscenity even that sprinkling of articles which contain some social value.
*922 Of course, even if a publication has a predominant theme which appeals to prurient interest in sex and such publication goes beyond customary limits of candor in description, no criminal liability attaches unless it is “ utterly without redeeming social value. ’ ’
Social value may be manifested by the literary, historical, informational or ideational aspects of a publication, even if it has elements of prurient appeal and is patently offensive. However, we hold that the use of the word “ redeeming ” in the social value test is a limiting factor — i.e., the social value of a publication as a ivhole must at least have a modicum of significance to release it from blame. (“ re-deem * * * to release from blame or debt: clear” Websters Seventh New Collegiate Dictionary, G. & C. Merriam Co. 1965, p. 717.) The fact that some of the articles in Screw are not obscene and may be legally innocuous does not necessarily mean that the publication has social value or importance. As Judge Friendly reminds us, truly pornographic material cannot be rescued by the inclusion of a few verses of the Psalms. (United States v. A Motion Picture Film [I am, Curious-Yellow], 404 F. 2d 196, 201.)
For example, the article by an attorney explaining the law relating to dirty words, does not redeem a publication whose advertising of dildoes, pornographic material and solicitation of sexually criminal acts are the dominant theme of the entire publication. In Memoirs {supra) the Supreme Court held that the social value of Cleland’s book, however small it may have been in terms of its literary merit and its depiction of the mores of a particular period, redeemed its prurient-candid sexual references. We find no such qualitative redemption in Screw. Indeed, the personal advertising in Screw constitutes in the words of Justice Douglas, “ expression * * # brigaded with illegal action.” (Memoirs v. Massachusetts, 383 U. S. 413, 426 supra).
We thus conclude that the publications before us are obscene and defendants Buckley and Goldstein are guilty as charged.
The defendant Balan alone asserts his innocence on the ground, inter aim, of absence of scienter. Balan is the president of the company that did the actual printing of Screw. As to him, we find the People have failed to prove scienter beyond a reasonable doubt. (Smith v. California, 361 U. S. 147.) Defendant Balan is acquitted.
Concur — Ringel, P. J., Tyler and Lang, JJ.