## BOURS v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

No. 2064.

1. Post Office ⬤⇒31—Criminal Offenses—Mailing Unmailable Matter—"Will."

Penal Code (Act March 4, 1909, c. 321) § 211, 35 Stat. 1129 (Comp. St. 1913, § 10381), declares unmailable every article or thing designed, adapted, or intended for preventing conception or producing abortion, and every written or printed card, letter, etc., giving information, directly or indirectly, where, or how, or from whom, or by what means any of the articles or things therein mentioned "may" be obtained or made, or where or by whom any act or operation for the procuring or producing of abortion "will" be done or performed, and prescribes the punishment for mailing any such unmailable matter. *Held* that, if a person uses the mails to give information that he elects, intends, or is willing to perform illegal abortions, he is guilty, though he does not expressly or impliedly bind himself to operate; but, while no obligation, promise, or assurance is essential, there must be the indication of a positive intent that the act will be done not merely that it may perhaps be performed.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 50, 52; Dec. Dig. ⬤⇒31.

For other definitions, see Words and Phrases, First and Second Series, Will.]

**2.** POST OFFICE ☞31—CRIMINAL OFFENSES—MAILING UNMAILABLE MATTER —"ABORTION."

The word "abortion" in Penal Code, § 211, prohibiting the mailing of information as to where operations producing abortions will be performed, must be taken in its general medical sense, irrespective of local statutory definitions.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 50, 52; Dec. Dig. ☞31.

For other definitions, see Words and Phrases, First and Second Series, Abortion.]

**3.** POST OFFICE ☞31—CRIMINAL OFFENSES—MAILING UNMAILABLE MATTER.

While the letter of Penal Code, § 211, prohibiting the mailing of information as to where operations producing abortions will be performed, would cover all acts of abortion, a reasonable construction, in view of its purpose, excludes acts in the interest of the natural life, and a physician may lawfully use the mails to say that, if an examination shows the necessity of an operation to save life, he will operate, if such in truth is his real position.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 50, 52; Dec. Dig. ☞31.]

**4.** POST OFFICE ☞31—CRIMINAL OFFENSES—MAILING UNMAILABLE MATTER.

While to render matter unmailable under Penal Code, § 211, as giving information concerning the performance of abortion, a positive intent that the act will be done must be indicated, the intent need not be apparent from the document itself, and a letter innocent on its face, a general statement that a person performs abortions, or an advertisement reading "Women's Diseases a Specialty," may be shown to have conveyed, and to have been intended to convey, the prohibited information.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 50, 52; Dec. Dig. ☞31.]

**5.** POST OFFICE ☞48—UNMAILABLE MATTER—INDICTMENT.

An indictment for mailing information as to where or by whom abortions will be performed must charge that apparently innocuous words were used and intended to be used in a wrongful sense, and must allege such matters as justify the charge.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ☞48.]

**6.** POST OFFICE ☞48—UNMAILABLE MATTER—INDICTMENT.

An indictment charged that defendant, a doctor, advertised "Women's Diseases a Specialty"; that he received a letter which, as therein set out, was dated September 16, 1912, stated that the writer's daughter was in a family way, and asked him if he would take her and relieve her of her disgrace; that on September 25th defendant, intending to give information where, how, from whom, and by what means an abortion might be produced, mailed a letter therein set out; and that he meant and intended to give and convey such information. His letter purported to be in answer to "your letter of the 24th," referred to "the operation you speak of," and stated that "would have to first see the patient before determining whether I would take the case or not." *Held* that, as the indictment neither charged nor alleged facts to show that defendant's letter was in answer to the letter of the 16th, and as it neither directly nor indirectly charged that the language of his letter was designed merely to disguise, in a form recognizable by the addressee, the prohibited information of a willingness to perform the illegal act, it was fatally defective as charging merely an intent to convey information as to where or by whom an abortion might be produced, and not information as to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

where or by whom it would be produced, and as failing to allege facts showing the essential intent.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ☞48.]

In Error to the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

T. Robinson Bours was convicted of an offense, and he brings error. Reversed and remanded.

W. B. Rubin, of Milwaukee, Wis., for plaintiff in error.

Guy D. Goff, U. S. Atty., and Otto H. Breidenbach, Asst. U. S. Atty., both of Milwaukee, Wis.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

MACK, Circuit Judge. The defendant was convicted under an indictment based on section 211 of the Penal Code, copied in the margin,[1] and was sentenced to two years in the penitentiary. The indictment, after alleging a newspaper advertisement by defendant reading: "Women's Diseases a Specialty. Consult Dr. T. Robinson Bours"— and giving his address and telephone number, charged the receipt by him on September 16, 1912, of the following letter:

"Sparta, Wis., Sept. 16, 1912.

"Dr. T. Robinson Bours, 403–404 Merrill Bldg., Milwaukee, Wis.—My Dear Doctor: I am at a loss as to begin to tell you my troubles. I am about worried to death of the recent discovery of the condition of my only daughter. The dear girl has had the misfortune to repose to implicated confidence of a

---

[1] Sec. 211. (*Obscene, etc., Matter Nonmailable.*) Every obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character, and every article or thing designed, adapted, or intended for preventing conception or producing abortion, or for any indecent or immoral use; and every article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for preventing conception or producing abortion, or for any indecent or immoral purpose; and every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information directly or indirectly, where, or how, or from whom, or by what means any of the hereinbefore-mentioned matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means conception may be prevented or abortion produced, whether sealed or unsealed; and every letter, packet, or package, or other mail matter containing any filthy, vile, or indecent thing, device, or substance; and every paper, writing advertisement or representation that any article, instrument, substance, drug, medicine, or thing may, or can be, used or applied for preventing conception or producing abortion, or for any indecent or immoral purpose; and every description calculated to induce or incite a person to so use or apply any such article, instrument, substance, drug, medicine, or thing, is hereby declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post-office or by any letter carrier. Whoever shall knowingly deposit, or cause to be deposited for mailing or delivery, anything declared by this section to be nonmailable, or shall knowingly take, or cause the same to be taken, from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both. (35 Stat. L. 1129.)

man who took advantage of her innocence and tried to ruin her, and now that she is in a family way the hound has deserted her. We are willing to make any sacrifice to preserve her good name and reputation. Will you take the girl and relieve her of her disgrace so she can once more face the world. How long would she have to remain there before it would be safe to move her? And what would the cost of the operation be, as well as all other charges? Please answer soon.

"Very respectfully,          Mrs. Chas. C. Wilson, Box 352."

It then proceeded:

"And the grand jurors aforesaid, upon their oaths aforesaid, do further say and present: That on the 25th day of September, 1912, the said T. Robinson Bours, then and there designing and intending to give information directly and indirectly to one Mrs. Charles C. Wilson, of Sparta, Wisconsin, where, how, and from whom, and by what means conception might be prevented and an abortion produced, unlawfully, feloniously and knowingly did at," etc., "place and cause to be placed in the post office at Milwaukee, Wisconsin, * * * a certain letter of the tenor following, to wit:

" 'Milwaukee, Wis., Sept. 25th/12.

"Mrs. Chas. C. Wilson, Sparta, Wis.—Dear Madam: Your letter of the 24th I just received and believe me I feel very sorry for you. The operation you speak of would cost from $50.00 to $100. Would have to first see the patient before determining whether I would take the case or not. She could stop at a hotel near by; she would be here about three days. Hotel bill about $10.00. no other expense. (Should come right away.)

" 'Sincerely yours,          T. Robinson Bours, M. D.'

—which said letter * * * was then and there nonmailable matter * * * and was intended by the said T. Robinson Bours, with full knowledge of its contents and import, to be delivered by the said United States post office establishment, at Milwaukee, Wisconsin, to the said Mrs. Chas. Wilson, at Sparta, Wisconsin. * * * That on the said 25th day of September, 1912, the said T. Robinson Bours, when he so deposited and caused to be deposited said last named letter in said post office, did so with full knowledge upon his part of its said contents and import, and unlawfully, feloniously and knowingly meant and intended thereby to give, and did thereby give, and convey information directly and indirectly to the said Mrs. Chas. Wilson, where, how and from whom, and by what means conception might be prevented, and an abortion produced."

While errors have been assigned on the admission and rejection of testimony and on portions of the charge to the jury, we shall confine ourselves to the error based on the overruling of a demurrer to the indictment. On the adoption of the Penal Code, March 4, 1909, the clauses "where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed or how or by what means conception may be prevented or abortion produced" were introduced into the act. Before that, the statute forbade the use of the mails for obscene literature or writings, for articles and things adapted to prevent conception or produce abortion, and for printed or written matter giving information as to where, how, from whom, or by what means such articles or things might be obtained or made. It aimed to keep out of the mails (1) obscene matter; (2) articles or things designed or intended for a use denounced by the act as immoral; and (3) written or printed matter in respect to such articles. Until the amendment, however, a letter or other written or printed information in respect, not to the articles excluded from the mails, but to the act

of abortion itself, did not fall within the statute. We cannot concur in the contrary views expressed in United States v. Somers (D. C.) 164 Fed. 259, under which the word "thing" in the original act was held to cover such a letter.

While the indictment charges that the letter of September 25th gave information both as to conception and abortion, it is properly conceded in the supplementary brief that, if it be unmailable, it must be because it comes within the clause prohibiting the mailing of a letter giving information "where or by whom any act or operation of any kind, for the procuring or producing of abortion will be done or performed," and not "how or by what means conception may be prevented or abortion produced," or within any other clause of the act.

[1] What significance, if any, has the use of the word "will" in this clause, as contradistinguished from "may," in the other clauses? The government insists that it indicates merely futurity; that information as to where or by whom such acts are done, irrespective of any indication that any specific act will be done, is thereby forbidden. Defendant contends that, to be unmailable, the letter must contain an express or implied obligation that the illegal operation will actually be performed.

[2, 3] Neither position is to be upheld. The amendment, closing the mails to written or printed information "where or by whom any operation for producing abortion will be performed," was adopted by Congress under the same power that was exercised in passing the original section, the national power of controlling the mails. Congress has no power to penalize or to legalize the act of producing an abortion. That is a matter for the states. In applying the national statute to an alleged offensive use of the mails at a named place, it is immaterial what the local statutory definition of abortion is, what acts of abortion are included, or what excluded. So the word "abortion" in the national statute must be taken in its general medical sense. Its inclusion in the statute governing the use of the mails indicates a national policy of discountenancing abortion as inimical to the national life. Though the letter of the statute would cover all acts of abortion, the rule of giving a reasonable construction in view of the disclosed national purpose would exclude those acts that are in the interest of the national life. Therefore a physician may lawfully use the mails to say that if an examination shows the necessity of an operation to save life he will operate, if such in truth is his real position. If he use the mails to give information that he elects, intends, is willing to perform abortions for destroying life, he is guilty, irrespective of whether he has expressly or impliedly bound himself to operate.

The information may be given as well by a third person as by the prospective operator; if by the former, there surely need be no implied obligation. A statement that X. will perform the operation would suffice. On the other hand, the bare statement that hundreds of illegal abortions are performed or will be performed every year in the city of Chicago, or even by Dr. X., would not make the letter per se unmailable.

[4] But while an obligation, promise, or assurance is not essential, the language of the act, in our judgment, requires that there must be the indication of a positive intent that the act will be done, not merely that it might perhaps be performed. This intent need not be apparent from the document itself; a letter, however innocent on its face, may, by proper allegations, be shown to convey, and to have been intended to convey, the prohibited information. Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550. The single word "Yes," if charged and proven to have been written and mailed in answer to an inquiry whether the writer would perform an illegal operation would be sufficient.

No disguise or subterfuge will be of any avail. The word "rupture" may be shown to have been used to indicate abortion to the knowledge of both parties (United States v. Kline [D. C.] 201 Fed. 954); the general statement that X. performs abortions, or an advertisement by X. "Women's Diseases a Specialty," may be proven to have been used and understood as meaning that X. will perform a certain definite abortion, or an abortion for any woman in trouble.

[5] The indictment, however, must charge that the apparently innocuous words were used and intended to be understood in the wrongful sense, and must allege such matters as justify the charge.

[6] While the government offered evidence that the letter of the 16th, a decoy letter, was in fact mailed on the 24th, thereby tending to prove that the reference in the letter of the 25th to one of the 24th was a mistake, and that in fact the letter of the 25th was in answer to that of the 16th, and not, as defendant testified, in answer to another letter, dated the 24th, and stating that the girl had done something to herself and was then in a dangerous condition, the indictment contains no allegation whatsoever to support the evidence or the inference therefrom; it does not even state that the letter of the 25th was in answer to that of the 16th; it merely avers the receipt of the latter and the mailing of the former; neither directly nor indirectly does it charge that the sentence, "Would have to first see the patient before determining whether I would take the case or not," was designed merely to disguise, in a form recognizable by the addressee, the prohibited information of a willingness to perform the illegal act.

The letter of the 25th, construed as written by one who had received the letter of the 16th, but as intended to be in reply to some letter of the 24th, the contents of which are not set out, conveys information that an abortion might possibly be produced, not that the act would be done. If in fact the defendant intended to operate, and to have Mrs. Wilson understand that he would operate only under such circumstances as would make it the duty of any reputable physician to perform the act, as, for example, only if an examination disclosed the conditions stated in the letter which defendant testified was dated the 24th, concededly he could not be found guilty.

The indictment is fatally defective in charging that the defendant by his letter intended to give information only as to where or by whom an abortion *might* be produced, not as to where or by whom it *would* be produced and in failing to allege facts that would support a con-

struction of the letter of September 25th as conveying and intending to convey information that the act would be performed.

Judgment reversed, and cause remanded.

NOTE.—SEAMAN, Circuit Judge, concurred in a reversal of the judgment, but did not read the opinion.