## UNITED STATES v. ONE PACKAGE.
### No. 62.

Circuit Court of Appeals, Second Circuit.
Dec. 7, 1936.

Lamar Hardy, U. S. Atty., of New York City (Francis H. Horan and Wil-

738

liam F. Young, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Greenbaum, Wolff & Ernst, of New York City (Morris L. Ernst, Alexander Lindey, and Eugene M. Kline, all of New York City, of counsel), for Dr. Hannah M. Stone, claimant-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The United States filed this libel against a package containing 120 vaginal pessaries more or less, alleged to be imported contrary to section 305(a) of the Tariff Act of 1930 (19 U.S.C.A. § 1305 (a). From the decree dismissing the libel the United States has appealed. In our opinion the decree should be affirmed.

The claimant Dr. Stone is a New York physician who has been licensed to practice for sixteen years and has specialized in gynecology. The package containing pessaries was sent to her by a physician in Japan for the purpose of trying them in her practice and giving her opinion as to their usefulness for contraceptive purposes. She testified that she prescribes the use of pessaries in cases where it would not be desirable for a patient to undertake a pregnancy. The accuracy and good faith of this testimony is not questioned. The New York Penal Law which makes it in general a misdemeanor to sell or give away or to advertise or offer for sale any articles for the prevention of conception excepts furnishing such articles to physicians who may in good faith prescribe their use for the cure or prevention of disease. People v. Sanger, 222 N.Y. 192, 118 N.E. 637. New York Penal Law (Consol. Laws; c. 40) § 1145. The witnesses for both the government and the claimant testified that the use of contraceptives was in many cases necessary for the health of women and that they employed articles of the general nature of the pessaries in their practice. There was no dispute as to the truth of these statements.

Section 305(a) of the Tariff Act of 1930 (19 U.S.C.A. § 1305(a) provides that: "All persons are prohibited from importing into the United States from any foreign country * * * any article whatever for the prevention of conception or for causing unlawful abortion."

The question is whether physicians who import such articles as those involved in the present case in order to use them for the health of their patients are excepted by implication from the literal terms of the statute. Certainly they are excepted in the case of an abortive which is prescribed to save life, for section 305 (a) of the Tariff Act only prohibits the importation of articles for causing "unlawful abortion." This was the very point decided in Bours v. United States, 229 F. 960 (C.C.A.7), where a similar statute (Cr.Code, § 211 [18 U.S.C.A. § 334 and note]) declaring nonmailable "every article or thing designed, adapted, or intended for preventing conception or producing abortion, or for any indecent or immoral use," was held not to cover physicians using the mails in order to say that they will operate upon a patient if an examination shows the necessity of an operation to save life. And this result was reached even though the statute in forbidding the mailing of any article "intended for * * * producing abortion" did not, as does section 305(a) of the Tariff Act, qualify the word "abortion" by the saving adjective "unlawful." In Youngs Rubber Corporation v. C. I. Lee & Co., 45 F.(2d) 103 (C.C.A.2), Judge Swan, writing for this court, construed the mailing statute in the same way. In referring to the mailing of contraceptive articles bearing the plaintiff's trade-mark, he adverted to the fact that the articles might be capable of legitimate use and said, at page 108 of 45 F.(2d), when discussing the incidence of the mailing statute:

"The intention to prevent a proper medical use of drugs or other articles merely because they are capable of illegal uses is not lightly to be ascribed to Congress. Section 334 forbids also the mailing of obscene books and writings; yet it has never been thought to bar from the mails medical writings sent to or by physicians for proper purposes, though of a character which would render them highly indecent if sent broadcast to all classes of persons. * * * It would seem reasonable to give the word 'adapted' a more limited meaning than that above suggested and to construe the whole phrase 'designed, adapted or intended' as requiring an intent on the part of the sender that the article mailed * * * be used for illegal contraception or abortion or for indecent or immoral purposes."

While Judge Swan's remarks were perhaps dicta, they are in full accord with the opinion of Judge Mack in Bours v. United States (C.C.A.) 229 F. 960, which we have already mentioned, and were relied on by the Court of Appeals of the Sixth Circuit when construing the mailing statute in Davis v. United States, 62 F. (2d) 473.

Section 305(a) of the Tariff Act of 1930 (19 U.S.C.A. § 1305(a), as well as title 18, section 334, of the U.S.Code (18 U.S.C.A. § 334), prohibiting the mailing, and title 18, section 396 of the U.S.Code (18 U.S.C.A. § 396), prohibiting the importing or transporting in interstate commerce of articles "designed, adapted, or intended for preventing conception, or producing abortion," all originated from the so-called Comstock Act of 1873 (17 Stat. 598), which was entitled "An Act for the Suppression of Trade in, and Circulation of, obscene Literature and Articles of immoral Use."

■ Section 1 of the act of 1873 made it a crime to sell, lend, or give away, "any drug or medicine, or any article whatever, for the prevention of conception, or for causing unlawful abortion." Section 2 prohibited sending through the mails "any article or thing designed or intended for the prevention of conception or procuring of abortion." Section 3 forbade the importation of "any of the hereinbefore-mentioned articles or things, except the drugs hereinbefore-mentioned when imported in bulk, and not put up for any of the purposes before mentioned." All the statutes we have referred to were part of a continuous scheme to suppress immoral articles and obscene literature and should so far as possible be construed together and consistently. If this be done, the articles here in question ought not to be forfeited when not intended for an immoral purpose. Such was the interpretation in the decisions of the Circuit Courts of Appeal of the Sixth and Seventh Circuits and of this court in Youngs Rubber Corporation v. C. I. Lee & Co., when construing the statute forbidding an improper use of the mails.

■ It is argued that section 305(a) of the Tariff Act of 1930 (19 U.S.C.A. § 1305(a) differs from the statutes prohibiting carriage by mail and in interstate commerce of articles "intended for preventing conception or producing abortion" because in section 305(a) the adjective "unlawful" is coupled with the word "abortion," but not with the words "prevention of conception." But in the Comstock Act, from which the others are derived, the word "unlawful" was sometimes inserted to qualify the word "abortion," and sometimes omitted. It seems hard to suppose that under the second and third sections articles intended for use in procuring abortions were prohibited in all cases while, under the first section, they were only prohibited when intended for use in an "unlawful abortion." Nor can we see why the statute should, at least in section 1, except articles for producing abortions if used to safeguard life, and bar articles for preventing conception though employed by a physician in the practice of his profession in order to protect the health of his patients or to save them from infection.

■ It is true that in 1873, when the Comstock Act was passed, information now available as to the evils resulting in many cases from conception was most limited, and accordingly it is argued that the language prohibiting the sale or mailing of contraceptives should be taken literally and that Congress intended to bar the use of such articles completely. While we may assume that section 305(a) of the Tariff Act of 1930 (19 U.S.C.A. § 1305(a) exempts only such articles as the act of 1873 excepted, yet we are satisfied that this statute, as well as all the acts we have referred to, embraced only such articles as Congress would have denounced as immoral if it had understood all the conditions under which they were to be used. Its design, in our opinion, was not to prevent the importation, sale, or carriage by mail of things which might intelligently be employed by conscientious and competent physicians for the purpose of saving life or promoting the well being of their patients. The word "unlawful" would make this clear as to articles for producing abortion, and the courts have read an exemption into the act covering such articles even where the word "unlawful" is not used. The same exception should apply to articles for preventing conception. While it is true that the policy of Congress has been to forbid the use of contraceptives altogether if the only purpose of using them be to prevent conception in cases where it would not be injurious to the welfare of the patient or her offspring, it is going far beyond such a policy to hold that abortions, which destroy incipi-

740

ent life, may be allowed in proper cases, and yet that no measures may be taken to prevent conception even though a likely result should be to require the termination of pregnancy by means of an operation. It seems unreasonable to suppose that the national scheme of legislation involves such inconsistencies and requires the complete suppression of articles, the use of which in many cases is advocated by such a weight of authority in the medical world.

The Comstock Bill, as originally introduced in the Senate, contained the words "except on a prescription of a physician in good standing, given in good faith," but those words were omitted from the bill as it was ultimately passed. The reason for amendment seems never to have been discussed on the floor of Congress, or in committee, and the remarks of Senator Conklin, when the bill was up for passage in final form, indicate that the scope of the measure was not well understood and that the language used was to be left largely for future interpretation. We see no ground for holding that the construction placed upon similar language in the decisions we have referred to is not applicable to the articles which the government seeks to forfeit, and common sense would seem to require a like interpretation in the case at bar.

The decree dismissing the libel is affirmed.

L. HAND, Circuit Judge (concurring).

If the decision had been left to me alone, I should have felt more strongly than my brothers the force of the Senate amendment in the original act, and of the use of the word, "unlawful," as it passed. There seems to me substantial reason for saying that contraconceptives were meant to be forbidden, whether or not prescribed by physicians, and that no lawful use of them was contemplated. Many people have changed their minds about such matters in sixty years, but the act forbids the same conduct now as then; a statute stands until public feeling gets enough momentum to change it, which may be long after a majority would repeal it, if a poll were taken. Nevertheless, I am not prepared to dissent. I recognize that the course of the act through Congress does not tell us very much, and it is of considerable importance that the law as to importations should be the same as that as to the mails; we ought not impute differences of intention

upon slight distinctions in expression. I am content therefore to accept my brothers' judgment, whatever might have been, and indeed still are, my doubts.