**UNITED STATES of America,
Plaintiff,**

v.

**H. L. BLAKE COMPANY, Inc., H. L.
Blake, President, Mrs. Pearl Blake,
Secretary, Defendants.**

**No. 685.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

Dec. 30, 1960.

Charles W. Atkinson, U. S. Atty., James A. Gutensohn, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

C. Floyd Huff, Jr., E. C. Thacker, Hot Springs, Ark., James T. Gooch, Arkadelphia, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

With the approval of the court and the consent of the Government, the defendants waived a jury trial in this case and it was tried to the court on November 2, 1960.

At the conclusion of the testimony offered by the Government, the defendants moved under Rule 29, Federal Rules of Criminal Procedure, 18 U.S.C.A., for the entry of judgment of acquittal. The motion was not granted, and the defendants proceeded to introduce testimony in their behalf, and at the close of all the evidence, the defendants renewed their motion. The court reserved decision on the motion, submitted the case, and directed that the parties file briefs in support of their respective contentions, which briefs have been received and considered, along with all of the testimony and exhibits thereto.

No request was made that the court "find the facts specially" as is required under Rule 23(c) of the Federal Rules of Criminal Procedure if such request is made, but the court believes that the facts should be stated specifically.

The indictment contains three counts. Count 1 charges that on or about January 12, 1959, the defendant, H. L. Blake Company, Inc., by H. L. Blake, President, and Mrs. Pearl Blake, Secretary, "knowingly deposited in the United States Mail at Hot Springs, Arkansas, for mailing certain articles and things, to-wit: an envelope bearing first class mailing stamp and return address of H. L. Blake Corporation, Box 393, Route 4, Hot Springs, Arkansas, addressed to Phillip Humphrey, General Delivery, Fox River Grove, Illinois, and containing two Big Chief prophylactics, together with printed literature describing the uses, benefits, and advantages of the Big Chief prophylactics, such things and articles being designed, adapted and intended for preventing conception, in violation of 18 U.S.C. 1461."

Count 2 is identical with Count 1 except that it is therein alleged that the envelope was addressed to Clarence N. Bearden Whse. Job., 4020 Armour Street, Fort Smith, Arkansas.

Count 3 is identical with Count 1 except that it is charged therein that the envelope was addressed to H. V. Staley Whse. Job., Route No. 3, Box 358, Salem, Virginia.

The indictment is based upon 18 U.S.C. A. § 1461, the applicable parts of which read as follows:

"Every article or thing designed, adapted, or intended for preventing conception or producing abortion, or for any indecent or immoral use; and

\* \* \* \* \* \*

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means conception may be prevented or abortion produced, whether sealed or unsealed;

\* \* \* \* \* \*

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

There is no substantial dispute concerning the facts.

The defendant, H. L. Blake Company, Inc., is an Arkansas corporation. The defendant, H. L. Blake, is President and General Manager, and actively directs the business of the corporation. The defendant, Mrs. Pearl Blake, is the wife of H. L. Blake, and is the Secretary of the corporation, and actively assists her husband in the conduct of the business. The corporation is engaged in business as a wholesale broker of rubber goods, including prophylactics sold under the trade mark "Big Chief," which was registered in the United States Patent Office on January 1, 1957 (defendant's exhibit 2).

The Postmaster of Hot Springs, Arkansas, intercepted a large number of envelopes mailed at the Albert Pike substation in Hot Springs, being first-class mail and bearing the return address of the defendant corporation. The envelopes were addressed to various persons throughout the United States. The Post-

master withheld dispatching the envelopes until he contacted the Solicitor for the Post Office Department in Washington, D. C. He was advised by the General Counsel for the Post Office Department to dispatch all the envelopes except one which should be retained and delivered to Post Office Inspector Howell. This was done. The envelope that was delivered to the Post Office Inspector was addressed to H. P. Downs, Wholesale Jobbers, 1200 Madeline Place, Fort Worth, Texas.

The Inspector took the envelope to the defendant, H. L. Blake, on January 21, 1959, and asked permission to open the envelope in Mr. Blake's presence, which permission was granted. In the envelope was one package which contained two rubber "Big Chief" prophylactics and two sheets of printed material. The package containing the prophylactics had printed thereon "Sold for the prevention of disease only." The printed material stated "Prophylactics rubber products for the prevention of disease," and contained other information hereinafter set forth.

As to the charge contained in Count 1, the court finds that on or about January 12, 1959, the defendants deposited in the mail at Hot Springs, Arkansas, an envelope addressed to Phillip Humphrey Wholesale Jobber, General Delivery, Fox River Grove, Illinois, in which was enclosed two separate sheets of information, on one of which appeared the following:

> "Big Chief latex now available to you. For jobbers only—a complete line of latex for vendors and counter sales.
>
> "Some exclusive territory available to a few selected jobbers who want to do good first—make money second, and to hold locations.
>
> "Prophylactic rubber products for the prevention of disease."

On the reverse side the price per gross of the article is set forth.

On the other separate sheet enclosed the following appears:

> "New sample enclosed—check sample carefully. Truly the thinnest and clearest yet. Also special shape. Examine again. Use sample, show to customer. Start taking orders now."

Also enclosed in the envelope was one package containing two Big Chief transparent prophylactics, upon which the following appears, "Sold for the prevention of disease only."

The envelope containing the information and the sample package was mailed by the defendants in response to a letter that the witness, Phillip Humphrey, had written to the defendants on November 12, 1958, on an order blank which someone had given him. In the letter Mr. Humphrey stated:

> "Dear Sirs:
>
> "A friend of mine gave me this [meaning order blank], and told me to write to you, that you have good items. I am a salesman and I sell to a lot of oil stations. Would you please send me some samples of your items so that I may see them and see if I may take orders and then I will send for the goods."

Prior to the receipt of the articles and informational material from the defendants, as well as other letters, the witness had concluded that he was not interested in selling the articles, but did not notify the defendants of his decision.

As to Count 2 of the indictment, the court finds that the witness, Clarence N. Bearden, mentioned in the count, was a soldier in the United States Army stationed at Fort Sill, Oklahoma, and that while he was at Fort Smith on a furlough, and prior to receiving the communication described in Count 2 of the indictment, he had written the defendants and asked them for information about representing them in the sale of the products. He was not a wholesale jobber, but the envelope containing the articles and the printed information, similar to the ones that were sent to the witness Humphrey, was addressed "Clarence N. Bearden Whse. Job., 4020 Armour Street, Fort Smith, Arkansas."

The witness did not purchase any of the goods because he was financially unable to do so.

As to Count 3, the court finds that the defendants mailed to H. V. Staley Wholesale Jobber, Route 3, Box 358, Salem, Virginia, an envelope containing the articles and information similar to that mailed to the witnesses Humphrey and Bearden, but when the letter reached the addressee, he refused to accept it, and the Postmaster at Salem forwarded the envelope and contents to a Post Office Inspector. However, Mr. Staley had requested information from the defendants regarding their stock of prophylactics, but before receiving the information requested by him, he concluded that he did not want to engage in that type of business since he was not a wholesale jobber and did not call on drug stores.

The article, a small package containing two Big Chief prophylactics, was enclosed in each of the envelopes mailed to the persons named in the indictment for inspection only, in connection with the printed information, at the request of the addressee and for his consideration in deciding whether he desired to become a jobber in the sale of the article to legitimate dealers. All the envelopes were addressed to wholesale jobbers. At the time the defendants mailed the envelopes, they had no information that the addressees were not jobbers.

Mark Rogers of Jeffersonville, Indiana, also received one of the envelopes, which was introduced in evidence along with its contents as Government exhibit 5. The envelope contained the same small package and the printed material or information. Rogers was a wholesale jobber and engaged in selling packaged drugs and sundries. He maintained a warehouse and had bought this type of merchandise from the defendants at various times in the past, which he resold to drug stores. The envelope which he received contained the indentical information as the ones hereinbefore mentioned.

Prior to the mailing of the sample packages and informational material, the defendants, in an effort to locate legitimate jobbers and wholesalers who sell to legitimate retailers, consulted a publication by Dun and Bradstreet which lists all merchants in the United States with their credit ratings, etc. Also, many inquiries were received from persons interested in wholesaling the merchandise. Ordinarily when an order for the articles is received from a wholesaler, the order is forwarded to the factory located at Akron, Ohio, which manufactures the prophylactics, and the prophylactics are then shipped directly by the manufacturer to the individual wholesaler. The defendants had no control over what the wholesaler did with the merchandise, but it was not the intention of the defendants that the prophylactics be sold and used for preventing conception.

No evidence was introduced indicating that the two prophylactics contained in the small packages, which accompanied the printed material, were sold, and the defendants did not intend that they be used for any purpose other than as samples.

Dr. Jett Scott, a reputable physician of the City of Hot Springs, testified that he was familiar with the rubber prophylactics sold by the defendants, and that they were designed, adapted and used for the prevention of disease. However, he further testified that they likewise could be used for the prevention of conception.

The Government apparently contends that under the rule announced in Poffenbarger v. United States, 8 Cir., 1927, 20 F.2d 42, 44, the defendants should be found guilty because they placed in the envelopes a "thing designed, adapted, or intended for preventing conception," and also that under the indictment they should be convicted for enclosing in the envelopes advertising material describing the article (prophylactics) in "a manner calculated to lead another to use or apply it for preventing conception."

The offense charged against the defendants was not known at common law, and ordinarily an indictment must follow the statute creating an offense,

but the well-established exception (as set forth in the Poffenbarger case, supra, at page 44) is that "if the statute denounces several things as a crime, the different things thus enumerated in the statute being connected by the disjunctive 'or,' the pleader must connect them by the conjunctive 'and' before evidence can be admitted as to more than one act. To recite that the defendant did the one thing or another makes the indictment bad for uncertainty. To charge the one thing and another does not render the indictment bad for duplicity, and a conviction follows if the testimony shows the defendant to be guilty of either the one or the other thing charged."

An examination of the literature or informational material mailed by defendant reveals that it did not purport to describe the prophylactics in a manner calculated to lead another to use it for preventing conception. On the other hand, the printed material stated positively that it was intended for use only for the prevention of disease.

█ The gist of the offense charged in each of the counts is that the defendants mailed an article (the prophylactics) "designed, adapted and intended for preventing conception." The court in Youngs Rubber Corporation, Inc. v. C. I. Lee & Co., Inc. et al., 2 Cir., 1930, 45 F.2d 103, at page 108 had under consideration the particular phrase above set forth, and said:

"Taken literally, this language would seem to forbid the transportation by mail or common carriage of anything 'adapted,' in the sense of being suitable or fitted, for preventing conception or for any indecent or immoral purpose, even though the article might also be capable of legitimate uses and the sender in good faith supposed that it would be used only legitimately. Such a construction would prevent mailing to or by a physician of any drug or mechanical device 'adapted' for contraceptive or abortifacient uses, although the physician desired to use or to prescribe it for proper medical purposes. The intention to prevent a proper medical use of drugs or other articles merely because they are capable of illegal uses is not lightly to be ascribed to Congress. Section 334 forbids also the mailing of obscene books and writings; yet it has never been thought to bar from the mails medical writings sent to or by physicians for proper purposes, though of a character which would render them highly indecent if sent broadcast to all classes of persons. See United States v. Chesman, C.C. E.D.Mo., 19 F. 497, 498; United States v. Clarke, D.C.E.D.Mo., 38 F. 500, 502; United States v. Smith, D.C.E.D.Wis., 45 F. 476, 478; United States v. Dennett, 2 Cir., 39 F.2d 564, 568, 76 A.L.R. 1092. It would seem reasonable to give the word 'adapted' a more limited meaning than that above suggested and to construe the whole phrase 'designed, adapted or intended' as requiring an intent on the part of the sender that the article mailed or shipped by common carrier be used for illegal contraception or abortion or for indecent or immoral purposes."

A study of the entire opinion discloses that the statement above quoted is dicta insofar as the question for decision before the court at that time was concerned, but the statement has been cited many times and has become the law to be applied to the facts where the question of a violation of the statute involved herein is before the court. To illustrate, in Davis v. United States, 6 Cir., 1933, 62 F.2d 473, 475, the court, after quoting the statement, said:

"We cite the case, not as precedent, but because the soundness of its reasoning commends itself to us, and because it amplifies the argument upon which the same court announced through Judge Augustus N. Hand that the statute must be given a reasonable construction, United States v. Dennett, 2 Cir., 39 F.2d 564, 76 A.L.R. 1092, and relies upon

the similar reasoning of Judge Mack, then speaking for the Court of Appeals of the Seventh Circuit, in Bours v. United States, 229 F. 960. Such rule of reasonable construction is also implicit in the holdings of the Supreme Court on an earlier form of the same act. Dysart v. United States, 272 U.S. 655, 47 S.Ct. 234, 71 L.Ed. 461; Swearingen v. United States, 161 U.S. 446, 450, 16 S.Ct. 562, 40 L.Ed. 765."

See also United States v. One Package, 2 Cir., 1936, 86 F.2d 737.

In United States v. Nicholas, 2 Cir., 1938, 97 F.2d 510, at page 512, Judge L. Hand said:

"We have twice decided that contraconceptive articles may have lawful uses and that statutes prohibiting them should be read as forbidding them only when unlawfully employed. Youngs Rubber Corporation v. C. I. Lee & Co., 2 Cir., 45 F.2d 103; United States v. One Package, 2 Cir., 86 F.2d 737. See, also, Davis v. United States, 6 Cir., 62 F.2d 473."

■ The burden was upon the Government to prove beyond a reasonable doubt that the prophylactics involved herein were designed, adapted, and intended to be used for the prevention of conception as charged in the indictment, and that the defendants deposited the prophylactics in the mail with the specific intent that they be used for the purpose of preventing conception.

In 22 C.J.S. Criminal Law § 29, pages 84–85, it is said:

"A crime is not committed if the mind of the person doing the act is innocent, 'Atcus non facit reum, nisi mens sit rea.' [The intent and the act must both concur to constitute the crime.] To constitute a crime the act must, except as otherwise provided by statute, * * * be accompanied by a criminal intent on the part of accused, or by such negligent and reckless conduct and indifference to the consequences of conduct as is regarded by the law as equivalent to a criminal intent."

In United States ex rel. Vraniak v. Randolph, 7 Cir., 1958, 261 F.2d 234, at page 237 the court said:

"The general rule is that, to constitute a crime, the act must (except in cases of malum prohibitum, which is irrelevant here) be accompanied by a criminal intent. 22 C.J.S. Criminal Law, §§ 29, 30, pp. 84, 86. The exception to the general rule is where a specific intent is an element of a crime, in which case the specific intent must be proved as an independent fact and cannot be presumed from the commission of the unlawful act."

In Imholte v. United States, 8 Cir., 1955, 226 F.2d 585, at page 590, Judge Collet, after discussing Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; Bloch v. United States, 9 Cir., 1955, 221 F.2d 786, 788; and Legatos v. United States, 9 Cir., 1955, 222 F.2d 678, said:

"These cases establish the proposition that where intent is a necessary element of the offense, is not inherent in the act itself, but is a specific intent involving bad purpose and evil motive, that that specific intent must be proved by or clearly inferred from the evidence, Wardlaw v. United States, supra, and the proof of such intent as an ingredient of the offense may not be eliminated by a presumption. Morissette v. United States, supra."

Thus it is well established that the defendants should not be convicted unless it is established beyond a reasonable doubt that at the time they mailed the sample packages of prophylactics that they intended them to "be used for illegal contraception."

■ During the trial the United States Attorney referred to the fact that the defendant, H. L. Blake, had been convicted on October 17, 1955, in criminal action No. 574, then pending in the Hot Springs Division of this court, upon an

indictment which contained two counts. Count 1 charged that the defendant, H. L. Blake, "did knowingly deposit and cause to be deposited in the United States mail at Hot Springs, Arkansas, for mailing certain articles and things, to-wit: two packages of approximately 2½ dozen each Big Chief prophylactics and one vending machine therefor contained in one C.O.D. parcel addressed to Curby Vervack, 1900 Rogers Avenue, Fort Smith, Arkansas, such articles and things being designed, adapted and intended for preventing conception, in violation of 18 U.S.C. 1461." Count 2 is similar to Count 1. It is alleged therein that on the same date, June 28, 1955, H. L. Blake mailed "3 boxes, one gross each, Big Chief prophylactics contained in an ordinary parcel addressed to Vervack Bros. Service Station, 2201 Rogers Avenue, Fort Smith, Arkansas, such articles and things being designed, adapted and intended for preventing conception, in violation of 18 U.S.C. 1461."

The defendant Blake entered a plea of nolo contendere to each count, and the court fined him $100 on Count 1, and placed him on probation for one year on Count 2.

The record in that case was not introduced in evidence, but the court is taking judicial knowledge of its record in considering whether H. L. Blake and the corporate defendant mailed the articles as charged in the indictment in the present case with the intent that they be used for illegal contraception. See 22 C.J.S. Criminal Law § 564, p. 874.

The indictment in the former case contained charges which, if true, created a strong inference of intent on the part of the defendant therein, H. L. Blake, that the prophylactics mailed at that time were intended for use in preventing conception. The fact that he mailed two packages, each containing 2½ dozen of prophylactics, together with a vending machine to Curby Vervack definitely established that he intended that the prophylactics be used for preventing conception. The same intention is clear from a consideration of the charges contained

in Count 2, where he mailed three boxes, each containing one gross, to Vervack Bros. Service Station.

Thus the charges to which the defendant Blake entered a plea of nolo contendere in the former case are based upon substantially different facts from the facts alleged and proven in the instant case. Also, the extraneous offense was committed more than five years prior to the offense of which the defendants are accused. Therefore, the court does not think that the former case tends to establish that the defendants in the instant case intended the sample packages to be used for contraception by the addressees whom the defendants believed to be wholesalers.

The exception to the rule against the use of evidence tending to show the commission of distinct and separate crimes, other than the one constituting the one on trial, is stated in Hall v. United States, 9 Cir., 1916, 235 F. 869, at page 870 where the court quoted from Jones on Evidence (1913), 144, as follows:

"'* * * The practical limit to its admission is that it must be sufficiently significant in character, and sufficiently near in point of time, to afford a presumption that the element sought to be established existed at the time of the commission of the offense charged. The limit is largely in the discretion of the judge.'"

On page 871 the court said:

"It is too plain, however, that proof of such collateral matter tends to produce the belief that defendant is a person of depraved moral character, and is highly prejudicial to the defendant on trial before a jury. The law, in presuming the defendant innocent until his guilt of the offense charged is proved, will not allow the government to prove evidence of defendant's bad or immoral character until defendant has put his character in issue by evidence in his behalf."

In Wiley v. United States, 8 Cir., 1958, 257 F.2d 900, on page 906 the

court held that intent, motive or purpose necessary for the establishment of a crime may rest in inference, and that evidence of other similar activities of the accused may be considered. However, the court approved the holding in Neff v. United States, 8 Cir., 1939, 105 F.2d 688, in which case the court quoted from Hall v. United States, supra, and then beginning at the bottom of page 691 of 105 F.2d said:

"To come within the exception the act or offense testified to must be similar in character to, and closely connected with, the offense charged.

" 'There must appear, between the extraneous crime offered in evidence and the crime of which the defendant is accused, some other real connection, beyond the allegation that they have both sprung from the same vicious disposition.' State v. Raymond, 53 N.J.L. 260, 21 A. 328, 330; Chitwood v. United States, 8 Cir., 153 F. 551, 11 Ann.Cas. 814; Prettyman et al. v. United States, 6 Cir., 180 F. 30; Colt v. United States, 8 Cir., 190 F. 305; Minner v. United States, 10 Cir., 57 F.2d 506.

"In Fish v. United States, 215 F. 544–551, L.R.A.1915A, 809, the Circuit Court of Appeals for the First Circuit uses the following language: 'While there are exceptions to the general rule—that on the trial of a person for one crime evidence that he has been guilty of other crimes is irrelevant—it is not to be understood that any of the exceptions, when rightly applied, go to the extent of sanctioning the idea that a defendant's propensity to commit crime or to commit crimes of the same sort as the one charged, can be put in evidence to prove him guilty of the particular offense; and that to come within the exceptions there must be some other real connection between the extraneous crime and the crime charged.' "

No federal statute forbids the manufacture or sale of contraceptives. The defendants have a right as 'brokers to sell, in good faith, the contraceptives for medical use, to druggists or other reputable dealers, or to jobbers for distribution to such trade.

Here the defendants were making an effort to acquire more jobbers who would legally sell the contraceptives, and under the proof in this case the court is convinced that the defendants did not violate the law as charged in the indictment, and are not guilty as charged.

Therefore a judgment of acquittal is being entered to-day.