**YOUNGS RUBBER CORPORATION, Inc., v. C. I. LEE & CO., Inc., et al.**

**No. 347.**

Circuit Court of Appeals, Second Circuit.

July 21, 1930.

On Reargument, Dec. 15, 1930.

Crichton Clarke, of New York City, for appellant.

Bernard Katzen, of New York City, for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The questions of law which have been argued by the parties cannot properly be decided upon this record. There being no diversity of citizenship, the District Court is without jurisdiction to grant relief except pursuant to the terms of the Trade-Mark Act of 1905 as amended (15 USCA § 81 et seq.). Hunyadi Janos Corp. v. Stoeger, 10 F.(2d) 26 (C. C. A. 2). Assuming the validity of the plaintiff's trade-mark, and assuming further that its right to maintain suit has not been lost by use of the trade-mark in unlawful business, as provided by Trade-Mark Act 1905, § 21 (15 USCA § 101), its case fails

for want of proof of any use of the mark by defendants in interstate or foreign commerce. Section 16 of the act (15 USCA § 96) provides as follows:

"* * * Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise * * * and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several States, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof. * * *"

In a trade-mark suit under the federal act, it is essential for the plaintiff to allege and prove an infringement which falls within the terms of this section; counterfeit use of the mark in intrastate sales is not sufficient. Kasch v. Cliett, 297 F. 169 (C. C. A. 5); United States Printing Co. v. Griggs, Cooper & Co., 279 U. S. 156, 158, 49 S. Ct. 267, 73 L. Ed. 650; Louis Bergdoll Brewing Co. v. Bergdoll Brewing Co., 218 F. 131 (D. C. E. D. Pa.); and see, as to the Trade-Mark Act of 1881 (21 Stat. 502), Ryder v. Holt, 128 U. S. 525, 9 S. Ct. 145, 32 L. Ed. 529; Warner v. Searle & Hereth Co., 191 U. S. 195, 24 S. Ct. 79, 48 L. Ed. 145.

The bill of complaint is absolutely barren of any allegation that defendants have used, or threaten to use, plaintiff's mark in interstate or foreign commerce. Proof of this fact is equally lacking. We have searched the record in vain for evidence of such use. The closest approach to it is Young's testimony at folio 112:

"* * * In regard to the reappearance in the market of defendant's Trojan goods, I have seen the goods and seen the invoices in numerous places. Reports from all our salesmen about the goods being offered around the country had reached me."

This is entirely consistent with the defendants having made only intrastate sales, and their purchasers, without connivance on their part, having resold them in other places. The only infringements proved were sales made by defendants within the state of New York. Since the necessary jurisdictional facts were neither alleged nor proved, the bill should have been dismissed for lack of jurisdiction instead of lack of equity.

The decree is reversed, and cause remanded for dismissal on the ground herein stated.

### On Reargument.

The appeal having been decided upon a jurisdictional point raised by the court of its own motion, a reargument was granted upon that point. Thereupon the plaintiff moved (1) for leave to amend its bill of complaint by inserting therein an allegation that the corporate defendant sells "in commerce among the several states" the infringing articles; and (2) that certain affidavits filed in the court below on the motion for a preliminary injunction be admitted in evidence.

An appeal from a decree in equity is not a trial de novo, and this court lacks power to take new evidence. It may, of course, permit an incomplete record to be corrected by addition of what was omitted, but the affidavits in question were not offered in evidence on the trial below, and therefore cannot be deemed part of the record brought up for review by this appeal. Boone v. Chiles, 10 Pet. 177, 208, 9 L. Ed. 388; Hovland v. Smith, 22 F. (2d) 769, 770 (C. C. A. 9). Hence the motion as to the affidavits must be denied, and we do not consider whether the statements and admissions they contain would be sufficient to prove sales in interstate commerce by the defendants.

An appellate court may permit an amendment to conform the pleadings to the proof (Norton v. Larney, 266 U. S. 511, 516, 45 S. Ct. 145, 69 L. Ed. 413), but we are not aware of any principle which would justify us in going further. Therefore the motion to amend must be denied, since we cannot find in the record proof of interstate sales by the defendant.

We have carefully gone over the record again in the light of plaintiff's petition for reargument and the argument thereon, but we are constrained to adhere to our former opinion that evidence of interstate sales is lacking. Mr. Youngs' testimony that he had reports of the defendant's Trojans being offered for sale in Virginia and North Carolina was objected to, and the objection was sustained. Without this, his testimony comes down to the statement that the plaintiff's business is nation wide and is greatly affected by the competition of defendants' Trojan goods. In addition there is Exhibit 9, defendants' price list, which does not refer to any market, local or national, and which plaintiff would have us take as evidence that it is addressed to a national market. It was obtained by Pollaci in connection with an intrastate sale. There is also Exhibit 11, which describes de-

fendants as "manufacturers and jobbers," and contains an order blank reading:

"Address .........................
"City ........... State ............."

This was also issued to Pollaci. All the evidence is as consistent with intrastate as with interstate business by defendants. The only sales actually proved were intrastate.

 However, we think the order contained in our original opinion was unduly strict in directing dismissal of the suit for lack of jurisdiction. It is obvious that the parties tried the case on the theory that the only issue was the question of legality or illegality of plaintiff's business and of its trademark on goods of this character. Plaintiff should be given an opportunity to prove, as counsel asserts it can, that defendants are really infringing in interstate commerce, and of course the defendants may contest that issue. It is within our power to send the case back for further evidence upon a single issue. Drainage Dist. No. 7 v. Sternberg, 15 F.(2d) 41 (C. C. A. 8). See Lee v. State Bank & Trust Co., 38 F.(2d) 45 (C. C. A. 2). Accordingly, the cause will be remanded, with directions to dismiss for lack of jurisdiction, unless plaintiff shall amend its complaint to allege sales by defendants of the infringing article in interstate commerce, and, in that event, to reopen the case for evidence by both parties upon that issue, and, if infringement in interstate commerce is proved, for the entry of an appropriate decree.

The entry of a decree, if infringement in interstate commerce is proved, will require a determination by the District Court of the merits of the controversy which has been briefed and argued on this appeal, namely, whether the character of its business is such as to preclude plaintiff from obtaining protection in a court of equity. If we express no opinion on this question, we are assured that another appeal will follow, however it may be decided below. No new evidence is to be received on this issue; the evidence is already before us, and its legal effect has been fully argued. Under these circumstances, we think that the time of this court will be conserved and justice will be accorded the parties more promptly, if we express our views at this time. Consequently we shall do so, though recognizing that it is contrary to our usual practice of deciding no more than is essential to dispose of an appeal.

 There is no federal statute forbidding the manufacture or sale of contraceptives. The articles which the plaintiff sells may be used for either legal or illegal purposes. If, for example, they are prescribed by a physician for the prevention of disease, or for the prevention of conception, where that is not forbidden by local law, their use may be legitimate; but, if they are used to promote illicit sexual intercourse, the reverse is true. The plaintiff confines its own sales to druggists and to jobbers who will agree to sell only to licensed drug stores. If purchasers from it sometimes resell illegally, that, plaintiff says, is a matter with which it has nothing to do, and should not put its business beyond the pale of equitable protection against an admitted infringement of its trade-mark.

The relief which plaintiff may obtain depends upon the provisions of the Trade-Mark Act of 1905, as amended, and section 21 thereof (33 Stat. 729 [15 USCA § 101]) reads as follows:

"That no action or suit shall be maintained under the provisions of this Act in any case when the trade-mark is used in unlawful business, or upon any article injurious in itself, or which mark has been used with the design of deceiving the public in the purchase of merchandise, or has been abandoned, or upon any certificate of registration fraudulently obtained."

It is the defendants' contention that this provision precludes the maintenance of plaintiff's suit.

As already stated, no federal statute forbids the manufacture or sale of contraceptives. By the local law of New York, such articles are not absolutely prohibited. Section 1145 of the Penal Law authorizes the supplying of them to lawfully practising physicians, or by their direction. In People v. Sanger, 222 N. Y. 192, 195, 118 N. E. 637, 638, there is a dictum that " * * * the protection thus afforded the physician would also extend to the druggist, or vendor, acting upon the physician's prescription or order."

Indeed, the individual defendant in the present suit has been convicted of criminal infringement of plaintiff's registered trade-mark, a result which can be reached under the local statutes only on the theory that the articles are things "which may be lawfully kept or offered for sale." N. Y. Penal Law, §§ 2350, 2352, 2354; People v. Lee (Apr. 17, 1930) 229 App. Div. 713, 241 N. Y. S. 824,[1] appeal to New York Court of Appeals refused April 28, 1930.[2] Hence it cannot be

---

[1] Memorandum without opinion.

[2] No opinion filed.

held under either federal or state law that all sales of the plaintiff's article are illegal. Since the article may be legally sold under some circumstances, we see no reason to doubt the validity of the trade-mark; nor can we say that it is necessarily "used in unlawful business" within the terms of said section 21.

Defendants' argument, however, relies upon sections of the Criminal Code (USCA, title 18, §§ 334, 396) and the plaintiff's own testimony that it distributes its merchandise by mail and interstate common carriage. Section 334 makes criminal the mailing of "nonmailable matter," and defines that phrase to include "every article or thing designed, adapted, or intended for preventing conception * * * or for any indecent or immoral use; and every article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for preventing conception or producing abortion, or for any indecent or immoral purpose. * * *"

Section 396 reads as follows: "Whoever shall * * * knowingly deposit or cause to be deposited with any express company or other common carrier, for carriage from one State * * * to any other State * * * any drug, medicine, article or thing designed, adapted, or intended for preventing conception, or producing abortion, or for any indecent or immoral use; * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Taken literally, this language would seem to forbid the transportation by mail or common carriage of anything "adapted," in the sense of being suitable or fitted, for preventing conception or for any indecent or immoral purpose, even though the article might also be capable of legitimate uses and the sender in good faith supposed that it would be used only legitimately. Such a construction would prevent mailing to or by a physician of any drug or mechanical device "adapted" for contraceptive or abortifacient uses, although the physician desired to use or to prescribe it for proper medical purposes. The intention to prevent a proper medical use of drugs or other articles merely because they are capable of illegal uses is not lightly to be ascribed to Congress. Section 334 forbids also the mailing of obscene books and writings; yet it has never been thought to bar from the mails medical writings sent to or by physicians for proper purposes, though of a character which would render them high-

ly indecent if sent broadcast to all classes of persons. See United States v. Chesman, 19 F. 497, 498 (C. C. E. D. Mo.); United States v. Clarke, 38 F. 500, 502 (D. C. E. D. Mo.); United States v. Smith, 45 F. 476, 478 (D. C. E. D. Wis.); United States v. Dennett, 39 F.(2d) 564, 568 (C. C. A. 2). It would seem reasonable to give the word "adapted" a more limited meaning than that above suggested and to construe the whole phrase "designed, adapted or intended" as requiring an intent on the part of the sender that the article mailed or shipped by common carrier be used for illegal contraception or abortion or for indecent or immoral purposes. See Bours v. United States, 229 F. 960, 964 (C. C. A. 7). However, we do not find it necessary to decide this question in the present case.

Let it be assumed that plaintiff violated the provisions of the Criminal Code (18 USCA §§ 334, 396) by mailing and shipping its merchandise. The question then arises whether such a violation precludes the maintenance of a trade-mark infringement suit by reason of section 21 of the Trade-Mark Act. That section bars the remedy only "when the trade-mark is used in unlawful business"; and it may be persuasively urged that only the use of the trade-mark in making unlawful sales brings section 21 into play. By way of illustration of the argument, suppose that a manufacturer of explosives sells them under a registered trade-mark, and in one instance shipped the goods to a purchaser by common carrier without marking them as explosives, as required by federal statute. 18 USCA § 385. It is by no means clear that such a violation of law would prevent the maintenance by the manufacturer of any suit for infringement of his trade-mark. Indeed, we should be disposed to hold that it would not. Not every unlawful act in connection with a business brings the trade-mark under the ban of section 21. Numerous cases have held that violation of the Sherman Act (15 USCA § 1 et seq.) does not bar a plaintiff from enjoining an infringer of his trade-mark, although in none of them, we believe, has this section been mentioned. Coca-Cola Co. v. Gay-Ola Co., 200 F. 720 (C. C. A. 6); Coca-Cola Co. v. Bennett, 238 F. 513 (C. C. A. 8); Nims, Unfair Competition (3d Ed.) § 418, and cases there cited. Taking literally the phrase under consideration, it is difficult to say that the trade-mark "is used" in the illegal transportation. But, aside from merely verbal difficulties and viewing the more important consideration of the probable purpose of the legislation, the purpose of sec-

tion 21 would seem to be to prevent a plaintiff from enforcing his trade-mark when he uses it to promote sales which are unlawful, or which deceive the public in respect to the goods or to the validity of the trade-mark. Hence, in our judgment, the plaintiff's violation of the mailing statute or the transportation statute, if such violations be assumed, would not bar its remedy, provided the sales it seeks to protect from trade-mark infringement by the defendants are legal. The only case found which has discussed the meaning of section 21 construes it as merely declaratory of the long-established equitable principle regarding the defense of illegal conduct on the part of a plaintiff. Anheuser-Busch v. Cohen, 37 F.(2d) 393, 395 (D. C. Md.).

We must consider, therefore, whether the proof shows plaintiff's business of selling to be unlawful. Its sales are to wholesale and retail druggists and to jobbers who will agree to sell only to drug stores. Section 1142 of the New York Penal Law makes it a misdemeanor to sell or offer for sale any article, drug, or medicine for the prevention of conception, or for causing unlawful abortion, but section 1145 provides that "the supplying of such articles to such [lawfully practicing] physicians or by their direction or prescription, is not an offense under this article." As already stated, the highest court of the state has said that the protection thus afforded physicians extends also to "the druggist, or vendor, acting upon the physician's prescription or order." People v. Sanger, supra. Doubtless the druggist or vendor to whom the court had reference is the retailer from whom the physician or his patient would naturally purchase. Nothing is said with reference to the right of a manufacturer to sell to druggists without a physician's order. But in view of the way modern business is conducted, such a right we believe to be implicit in the statute; otherwise no local supply of abortifacient or contraceptive drugs or instruments would be available for use by physicians. It can hardly be supposed that the physician was to seek out a manufacturer each time he had professional need for a drug or instrument of the generally prohibited character, or that, in anticipation of a possible future need, he should in advance direct the manufacturer to place a supply with the local druggist whom he favored. We conclude, therefore, that a manufacturer of drugs or instruments for medical use may in good faith sell them to druggists or other reputable dealers in medical supplies, or to jobbers for distribution to such trade.

The defendant contends that the volume of plaintiff's sales demonstrates that its product is being illegally disposed of by retail druggists, and charges plaintiff with complicity in their illegal sales. Plaintiff's president testified that its business runs to about 12,000 gross per month. This means approximately 20,000,000 a year, and plaintiff is not the only manufacturer of such articles. Defendants' witness, Dr. Jacobs, testified that the article is infrequently prescribed by physicians, and is commonly sold by drug stores to any customer who calls for it, and without requiring a physician's prescription. It can hardly be doubted that such a volume of business could not under the circumstances be supported solely by the legitimate demand. Let it be conceded, then, that some of plaintiff's goods are used legitimately but many are disposed of by its purchasers for illegal uses, as plaintiff itself must know. Does this fact preclude it from maintaining its suit because of section 21 or general equitable principles?

In Fuller v. Berger, 120 F. 274, 65 L. R. A. 381 (C. C. A. 7), certiorari denied 193 U. S. 668, 24 S. Ct. 852, 48 L. Ed. 839, the complainant sought to enjoin infringement of a patent on a bogus coin detector for coin-operated vending machines. The only use to which complainant put the detector was to guard gambling machines made by it. Defendants, without license, applied the detector to gambling machines of their make. It was urged that the complainant had no standing because he came into court with unclean hands, but an injunction was granted, the court saying as to this defense (page 278 of 120 F.):

"* * * Equity is not concerned with the general morals of a complainant; the taint that is regarded must affect the particular rights asserted in his suit. * * * But if the defendant can do no more than show that the complainant has committed some legal or moral offense, which affects the defendant only as it does the public at large, the court must grant the equitable remedy and leave the punishment of the offender to other forums."

This principle was followed in Board of Trade v. L. A. Kinsey Co., 130 F. 507, 69 L. R. A. 59 (C. C. A. 7), affirmed 198 U. S. 236, 25 S. Ct. 637, 49 L. Ed. 1031, where the Board of Trade was allowed to protect its property right in market quotations based on the transactions on its exchange; the defense urged being that a large percentage of such transactions were illegal gambling contracts and that the plaintiff permitted such gam-

bling on its exchange. There can be no doubt that the general rule that one coming into equity must come with clean hands is confined to the conduct of the party in the matter before the court, and not to matters aliunde. This is the ratio decidendi of the authorities, already referred to, holding that the owner of a patent or a trade-mark can protect his property and enforce his rights against an infringer, even though the plaintiff may be engaged in a business which is in restraint of trade. See Coca Cola Cases, supra. See, also, Talbot v. Independent Order of Owls, 220 F. 660, 662 (C. C. A. 8).

 In the case before us, the plaintiff has a valid trade-mark, and, under general equitable principles, is entitled to protect its sales, so far as they are legal, against unfair competition by piracy of the mark. In our opinion section 21 gives a defendant in equity no new or greater defense. If the defendant's unfair competition were shown to deprive the plaintiff of the opportunity to make only sales which were illegal, a court of equity might properly refuse relief, as it did in Portsmouth Brewing Co. v. Portsmouth Brewing & Bottling Co., 67 N. H. 433, 30 A. 346, and McVey v. Brendel, 144 Pa. 235, 22 A. 912, 13 L. R. A. 377, 27 Am. St. Rep. 625. If, for example, plaintiff were selling direct to the public without a physician's prescription, it could not complain because defendant, by making similar sales under piracy of plaintiff's trade-mark, deprived it of such illegal business. But plaintiff sells only to druggists or to jobbers for distribution to druggists. Sales to druggists are legal unless the plaintiff is in complicity with the druggists' intention to resell illegally. Mere knowledge by a vendor of his vendee's unlawful purpose does not render the contract illegal in most jurisdictions. Graves v. Johnson, 179 Mass. 53, 60 N. E. 383, 88 Am. St. Rep. 355; Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Hill v. Spear, 50 N. H. 253, 9 Am. Rep. 205; cf. Hanauer v. Doane, 12 Wall. 342, 20 L. Ed. 439 (making distinction as to "heinous" crime); 3 Williston, Contracts, § 1754. While the volume of plaintiff's sales throughout the country justifies the inference that illegal sales are being made by its vendees, and that plaintiff must know this, there is nothing to show plaintiff's complicity in aiding or desiring such illegal sales.

 Defendants argue that, while plaintiff's contracts may be legally enforceable against its vendees, its business is in its nature sufficiently reprehensible to be outside the field of equitable protection. It must be conced-

ed, however, that no reprehensibility attaches to such part of the business as relates to goods that never become diverted to illegal use. As to so much surely plaintiff is entitled to protection. If there is another part relating to goods which may become so diverted, that is a collateral matter which defendants cannot successfully invoke to excuse infringement of plaintiff's valid trade-mark. Cf. World's Dispensary Medical Ass'n v. Pierce, 203 N. Y. 419, 423, 96 N. E. 738; Bentley v. Tibbals, 223 F. 247, 252 (C. C. A. 2). Accordingly, if the District Court shall find that defendants have infringed in interstate commerce, plaintiff should be granted an injunction and accounting; but on such accounting plaintiff should recover no damages unless it can show that it has been injured in respect to sales which it might legally have made.

The decree is reversed, and the cause remanded for further proceeding in conformity with this opinion.