29 N.J. Super. 145 (1953)
102 A.2d 52
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ERNEST TRACY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1953.
Decided December 21, 1953.
*147 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Frank H. Lawton argued the case for the State (Mr. Mario H. Volpe, attorney).
*148 Mr. George Pellettieri argued the cause for the defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This is a test case. The appellant was convicted in the municipal court as a disorderly person for violating N.J.S. 2A:170-76. The County Court affirmed. By the statute it is provided:
"Any person who, without just cause, * * * possesses with intent * * * to sell the same, any instrument, medicine or other thing, designed or purporting to be designed for the prevention of conception * * * is a disorderly person."
The defendant owns vending machines located in men's toilets in gasoline stations, each machine containing articles called prophylactics, commonly known as condoms, sold to the public by inserting a quarter into the machine. In his brief defendant cooncedes the State established that he (in the words of the statute) "possessed" the articles with intent to sell them. However, with respect to the statutory provision as to "just cause," no question was raised below, and the briefs here do not go into it. Cf. 153 A.L.R. 1218, 1220, 1221.
Both the machine, and the package containing the prophylactic, bear the legend: sold only for the prevention of disease. At the trial in the County Court the State asked the court to take judicial notice that, notwithstanding the legend, this prophylactic "is a contraceptive"  that is, that it was designed as such. The establishment of this fact was essential to the State's case, and there was no other proof of the matter. Indeed there was no proof at all on the part of the defendant.
The court may take judicial notice of any fact so notorious as not to be the subject of a reasonable dispute. Grand View Gardens, Inc. v. Borough of Hasbrouck Heights, 14 N.J. Super. 167 (App. Div. 1951); Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200 (1875); Thayer, Judicial Notice, 3 Harvard L. Rev. 285, 305 (1890); Model Code of *149 Evidence, see Professor Morgan's discussion of Judicial Notice, pp. 65-69, also Rules 801-806. In State v. Arnold, 217 Wis. 340, 258 N.W. 843, 846 (Sup. Ct. 1935), it is said that the sale of condoms "in a public toilet by a mechanical vending machine is a sufficient warrant for the inference that the purpose of its sale was contraception and not merely the prevention of disease." Cf. Commonwealth v. Goldberg, 316 Mass. 563, 55 N.E.2d 951 (Sup. Jud. Ct. 1944). State v. Arnold, supra, however, is not quite in point. Our statute deals, not with the designs of the seller of the article  in other words, not with "the purpose of its sale" (State v. Arnold, supra)  but with the designs of the article; the statute speaks of any "thing, designed or purporting to be designed for the prevention of conception." Furthermore, by employing the words "purporting to be designed," the statute does not require proof of the article's designs as they existed in the mind of the manufacturer or any one else when the article was made. "To purport" means, as used here, "to have the appearance * * * of being." Webster's New International Dictionary (2nd ed.); United States v. McGuire, 64 F.2d 485, 491 (C.C.A. 2, 1933).
So the question then becomes this: May judicial notice be taken that the prophylactics here "have the appearance of being" designed as contraceptives? We think judicial notice may be taken that their apparent design is twofold: to prevent not only conception but also disease. In reaching this conclusion we attach little significance to the unmistakably self-serving legend on the package; the sale through a vending machine, without any meeting of buyer and seller, belies any restriction professedly placed upon the purpose of the sale.
That brings us to the defendant's principal point. If, he argues, you find (as we do find) that the article is designed for two purposes  first, to prevent disease and, second, to prevent conception  then, since the first would lead to an acquittal and the second to a conviction, the presumption of innocence, not to speak of the presumption *150 that the law has been obeyed, compel an acquittal. Commonwealth v. Werlinsky, 307 Mass. 608, 29 N.E.2d 150 (Sup. Jud. Ct. 1940). The answer to the argument is simple. We think the statute, we deal with, may perhaps be aimed at condoms more than any other article, despite the fact that they are designed for both purposes stated. Where one of the substantial designs of an article is the prevention of conception, any person who, without just cause, comes into the possession of it, with intent to sell it, is caught squarely within the terms of the statute. It matters not that the article was designed for some other purpose too. There is no warrant whatever for holding (as we are asked to do) that the words, "designed for the prevention of conception," mean "designed exclusively" for that purpose.
The defendant insists strongly that if the statute is so construed, then any one who, without just cause and with intent to sell the same, possesses antiseptics capable of use as a contraceptive, such as vinegar, sour milk and warm water, is a disorderly person. Of course not. None of these things was "designed" to prevent conception. We need not consider certain manufactured antiseptics referred to.
The remainder of the defendant's argument seems to be bent upon finding in the statute an implication that, to constitute the offense, there must be an intention on the vendor's part to sell the prophylactics for an illegal purpose. In support of that endeavor, the defendant first relies upon Youngs Rubber Corp. v. C.I. Lee & Co., 45 F.2d 103, 108 (C.C.A. 2 1930), dealing with 18 U.S.C. § 1461 (the Comstock Act), and § 1462, which prohibit the mailing, or deposit with any common carrier, of any "thing designed, adapted, or intended for preventing conception." The court held "the intention to prevent a proper medical use of drugs or other articles merely because they are capable of illegal use is not lightly to be ascribed to Congress." Therefore in a dictum the court, in effect, recast the terms of the statute so as to require "an intent on the *151 part of the sender that the article mailed or shipped by common carrier be used for illegal contraception * * *." That dictum was followed in United States v. One Package, 86 F.2d 737 (C.C.A. 2 1936) where a specialist in gynecology was sued under 19 U.S.C.A. § 1305 (a) for importing pessaries. There the court, construing the statutory words "any article whatever for the prevention of conception," said the statute was not well understood by Congress when it was passed. For other federal cases in accord, see United States v. Nicholas, 97 F.2d 510 (C.C.A. 2 1938) and Davis v. United States, 62 F.2d 473 (C.C.A. 6 1933).
There are two things to be said as to these federal cases. First, other courts faced with statutes similar to the federal statutes  similar, in that they contain no exception to cover the matter of proper medical use  have rejected the federal authorities, refusing to inject into their statutes such an exception. State v. Nelson, 126 Conn. 412, 11 A.2d 856 (Sup. Ct. Err. 1940); Tileston v. Ullman, 129 Conn. 84, 26 A.2d 582 (Sup. Ct. Err. 1942); Commonwealth v. Gardner, 300 Mass. 372, 15 N.E.2d 222 (Sup. Jud. Ct. 1938); cf. Lanteen Laboratories, Inc. v. Clark, 294 Ill. App. 81, 13 N.E.2d 678 (App. Ct. 1938). Second, the New Jersey statute is not so unreasonable as to warrant the taking of liberties with its language. Indeed, it is quite different from the statute first enacted in New Jersey, L. 1869, p. 1115, which was unqualified in its terms, and which in that respect was like the Comstock Act of 1873, now 18 U.S.C., § 1461, supra and like other similar statutes enacted then and thereafter in a nation-wide movement (cf. Lanteen Laboratories, Inc. v. Clark, 294 Ill. App. 81, 13 N.E.2d 678 (App. Ct. 1938)). However the Revision of 1877, p. 234, § 44 introduced into our statute the words "without just cause," a phrase not found in the federal acts; and these words make provision for the very situations that concern the federal courts, the cases of "proper medical care" and the like. It might be noticed too, while looking back over the legislative history on the matter, that in another revision of the New Jersey *152 statute (the revision effective January 1, 1952, referred to in State v. Maier, 13 N.J. 235, 239, 1953), the offense we are concerned with was reduced in New Jersey from a misdemeanor to one merely of disorderly conduct, N.J.S. 2A:170-76, supra; whereas under 18 U.S.C., §§ 1461 and 1462, the offense still is a serious felony.
The defendant next seems to put forward a general proposition that to convict one of crime requires proof of an intention to commit a crime. State v. Terry, 91 N.J.L. 539 (E. & A. 1917); State v. Costa, 11 N.J. 239, 246 (1953); Nosowitz v. United States, 282 F. 575 (C.C.A. 2 1922), dealing with 27 U.S.C.A., § 30. There is no warrant in our law for so general a proposition. On the contrary it is plainly within the competence of the Legislature to constitute an act a crime, regardless of the lack of a mens rea or criminal purpose. Halsted v. State, 41 N.J.L. 552 (E. & A. 1879); State v. Kuehnle, 85 N.J.L. 220 (E. & A. 1913); State v. Labato, 7 N.J. 137 (1951). The question is, did the Legislature intend it so. On that, each statute must stand on its own terms. Thus possession of lottery slips make one a disorderly person, even though there be no intention to put them to an unlawful use. State v. Murzda, 116 N.J.L. 219, 226 (E. & A. 1935); State v. Labato, 7 N.J. 137, 149, 150 (1951), supra. It may be urged that a mens rea or criminal purpose is never required in connection with disorderly conduct unless the statute plainly demands it; but we need not stop to examine so broad a matter. Suffice it here to say we see no basis for adding to N.J.S. 2A:170-76 a requirement that the one in possession of the prophylactics must have a criminal purpose.
Other cases relied upon by defendant  State v. Zellmer, 202 Iowa 638, 210 N.W. 774, 775 (Sup. Ct. 1926), and Bibb v. State, 84 Ala. 13, 4 So. 275 (Sup. Ct. 1888)  may be dismissed cursorily. The statutes dealt with there, may perhaps be said to be somewhat parallel to that here, except that the words "designed" or "purporting to be designed," or a participle of like import indicating the design of the *153 article, has been omitted. However, leave those words out of our statute here, and you put an entirely different aspect on it.
In a final endeavor at construing our statute so as to imply therein a provision that, to constitute the offense, the vendor must intend, when he sells the prophylactics, to prevent conception, the defendant relies upon Commonwealth v. Corbett, 307 Mass. 7, 29 N.E.2d 151, 152 (Sup. Jud. Ct. 1940). There the court had before it the statutory words "whoever sells * * * any * * * instrument or article whatever for the prevention of conception" is guilty of a felony. Looking at the context and the legislative history, the Massachusetts court read into the statute the words "intended to be used" as modifying the word "article," and then found that, to warrant a conviction, it must be established that the seller intended the article to be used for the prevention of conception. The words "intended to be used" may possibly apply to the intentions of either the maker or the seller. Cf. Weinstein v. United States, 293 F. 388 (C.C.A. 1 1923). But our statute uses the words "designed or purporting to be designed" which apply to the intention or apparent purpose of the designer or maker, not the seller. The case is not in point.
Affirmed.