72 N.J. Super. 276 (1962)
178 A.2d 259
SANITARY VENDORS, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
BRENDAN T. BYRNE, PROSECUTOR OF ESSEX COUNTY; NORMAN HEINE, PROSECUTOR OF CAMDEN COUNTY; ALVIN E. GRANITE, PROSECUTOR OF GLOUCESTER COUNTY; GUY W. CALISSI, PROSECUTOR OF BERGEN COUNTY; LAURENCE A. WHIPPLE, PROSECUTOR OF HUDSON COUNTY; EDWARD J. DOLAN, PROSECUTOR OF MIDDLESEX COUNTY; VINCENT P. KEUPER, PROSECUTOR OF MONMOUTH COUNTY; H. DOUGLAS STINE, PROSECUTOR OF UNION COUNTY; THOMAS J. MUCCIFORI, ASSISTANT PROSECUTOR OF OCEAN COUNTY; FRANK C. SCERBO, PROSECUTOR OF MORRIS COUNTY; CLYDE C. JEFFERSON, PROSECUTOR OF HUNTERDON COUNTY; FRANK A. DOLAN, PROSECUTOR OF SUSSEX COUNTY; STANLEY E. RUTKOWSKI, PROSECUTOR OF MERCER COUNTY; ARTHUR S. MEREDITH, PROSECUTOR OF SOMERSET COUNTY AND THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 17, 1962.
*278 Mr. David Schechner argued the cause for plaintiff.
Mr. Evan W. Jahos, Deputy Attorney General, argued the cause for defendants (Mr. David D. Furman, Attorney General, attorney).
WAUGH, A.J.S.C.
This is a declaratory judgment action brought under N.J.S. 2A:16-50 et seq., to determine the validity of N.J.S. 2A:170-76, a section of the Disorderly Persons Act. The parties have stipulated as to the facts.
The plaintiff Sanitary Vendors, Inc. is a New Jersey corporation engaged in the vending machine business in 14 counties throughout the State. At various locations it *279 has installed automatic vending machines which deliver packages of prophylactics or condoms to persons who deposit a certain amount of coinage in the machine.
At various times since 1951 the defendants and other law enforcement authorities, in the enforcement of N.J.S. 2A:170-76 have confiscated vending machines operated by the plaintiff. Agents of the plaintiff and owners of the location have been threatened with arrest if they resisted the removal of machines. As a result of the defendant's actions, the plaintiff brought this action to have N.J.S. 2A:170-76 declared unconstitutional, and therefore unenforcible; to enjoin the defendants and other law enforcement officers from enforcing the act; and to declare the rights and status of the plaintiff under N.J.S. 2A:170-76.
N.J.S. 2A:170-76 states:
"Any person who, without just cause, utters or exposes to the view of another, or possesses with intent to utter or expose to the view of another, or to sell the same, any instrument, medicine or other thing, designed or purporting to be designed for the prevention of conception or the procuring of abortion, or who in any way advertises or aids in advertising the same, or in any manner, whether by recommendation for or against its use or otherwise, gives or causes to be given, or aids in giving any information how or where any such instrument, medicine or other thing may be had, seen, bought or sold, is a disorderly person."
Unquestionably, the plaintiff is entitled to a declaration of its rights and status under the statute. Lucky Calendar Co. v. Cohen, 19 N.J. 399 (1955), reaffirmed at rehearing, 20 N.J. 451 (1956), is squarely in point. There the plaintiff corporation, which was warned that its activities in the sales promotional field would cause it to be subject to criminal proceedings as in violation of our lottery statutes, was held entitled to a declaratory judgment.
Chief Justice Vanderbilt, speaking for our Supreme Court in Lucky Calendar, at pages 408, 409, said:
"In this case there is a bona fide justiciable controversy as to the legal rights of the plaintiff to engage in the kind of activity discussed *280 herein * * *. Accordingly, there are present the necessary elements for a declaratory action, Borchard, Declaratory Judgments (2d ed. 1941), chapter II. * * * The advantages of such a proceeding are summarized in Borchard, supra, at page 1020:
`The criminal prosecution is at best a crude weapon of social control. While it may be the only instrument available to punish and exercise, if possible, the major offenses against society, it is quite unsuited to the more subtle adjustments of competition, business practice and regulation which mark the impact of modern industry and business on all classes of society. What is here needed is not the policeman's club but the arbitrator's and traffic manager's refinement and direction of legislative correctives in the light of social need. The criminal trial is hardly the forum for making such adjustments, and for arguing out the shadowy and movable line between the permissible and the unprivileged practice.'"
Another circumstance making a declaratory judgment necessary in this case is the existence of three reported decisions touching upon the general subject matter of the statute here under consideration, namely, State v. Tracy, 29 N.J. Super. 145 (App. Div. 1953); State v. Kohn, 42 N.J. Super. 578 (Cty. Ct. 1956); and State v. Kinney Bldg. Drug Stores, Inc., 56 N.J. Super. 37 (Cty. Ct. 1959).
In State v. Tracy, 29 N.J. Super. 145 (App. Div. 1953), the Appellate Division upheld the conviction of the defendant as a disorderly person for violating N.J.S. 2A:170-76. The defendant there sold prophylactics by machine, the same factual situation as involved here.
The holding of the court in Tracy may be said to be:
(1) The court may take judicial notice that the prophylactics "have the appearance of being" designed as contraceptives;
(2) the statutory words "designed or purporting to be designed for the prevention of conception" do not require proof that they were "designed exclusively for that purpose";
(3) the State need not prove an intent on the vendor's part to sell for an illegal purpose; and
(4) as a corollary to 3, the statute does not require proof of a criminal purpose.
*281 In Tracy, the court by way of obiter dicta said, at page 151:
"There are two things to be said as to these federal cases. First, other courts faced with statutes similar to the federal stautes  similar, in that they contain no exception to cover the matter of proper medical use  have rejected the federal authorities refusing to inject into their statutes such an exception. State v. Nelson, 126 Conn. 412, 11 A.2d 856 (Sup. Ct. Err. 1940); Tileston v. Ullman, 129 Conn. 84, 26 A.2d 582 (Sup. Ct. Err. 1942); Commonwealth v. Gardner, 300 Mass. 372, 15 N.E.2d 222 (Sup. Jud. Ct. 1938); cf. Lanteen Laboratories, Inc. v. Clark, 294 Ill. App. 81, 13 N.E.2d 678 (App. Ct. 1938). Second, the New Jersey statute is not so unreasonable as to warrant the taking of liberties with its language. Indeed, it is quite different from the statute first enacted in New Jersey, L. 1869, p. 1115, which was unqualified in its terms, and which in that respect was like the Comstock Act of 1873, now 18 U.S.C. § 1461, supra, and like other similar statutes enacted then and thereafter in a nation-wide movement (cf. Lanteen Laboratories, Inc. v. Clark, 294 Ill. App. 81, 13 N.E.2d 678 (App. Ct. 1938)). However, the Revision of 1877, p. 234, § 44, introduced into our statute the words `without just cause,' a phrase not found in the federal acts; and these words make provision for the very situations that concern the federal courts, the cases of `proper medical care' and the like. * * *"
That this is obiter is clear from the opinion at page 148, wherein the court says:
* * * However, with respect to the statutory provision as to `just cause,' no question was raised below, and the briefs here do not go into it. Cf. 153 A.L.R. 1218, 1220, 1221.
In State v. Kohn, 42 N.J. Super. 578 (Cty. Ct. 1956), the defendant was owner of a wholesale and retail rubber goods business. Codefendant Simon was an employee who sold a package of condoms to a detective, and as a result both defendants were convicted for violating N.J.S. 2A:170-76, Kohn in that he did possess, and Simon in that he did sell "without just cause * * * an article known as a rubber prophylactic * * * designed and purportedly designed for the prevention of conception."
On appeal to the County Court the defendants attacked *282 N.J.S. 2A:170-76 "as invalid by reason of its vagueness." They argued that "a statute, especially one with criminal sanctions, which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application is invalid, and violates `the first essential of due process of law.'" The court, after giving a complete history of the particular legislation involved, sustained the statute and held that the words "without just cause" meant "proper medical care" "and the like." It held that just cause might be proven by a defendant "by all the circumstances of the case."
The plaintiffs here urge that the County Court judge who decided Kohn misread Tracy. This court is of the opinion that the confusion is with counsel. Tracy determines that mens rea or criminal intent is not required to be proven in this type of case. It nowhere suggests that a defendant is not completely free to show cause, as Judge Gaulkin puts it on page 586, "the purpose of possession, i.e., the intent * * * not by private thoughts of the defendant but as intent is usually proven, namely by all of the circumstances in the case."
In State v. Kinney Bldg. Drug Stores, Inc., 56 N.J. Super. 37 (Cty. Ct. 1959), defendants were convicted of uttering "without just cause a thing purporting to be designed for the prevention of conception * * *." On appeal, a motion was made to dismiss the complaint for the reason that the statute upon which the alleged offenses are predicated (N.J.S. 2A:170-76) is unconstitutional under both the N.J. Const. 1947, Art. I, par. 1, and the U.S. Const. Amend. XIV, § 1.
The County Court, after an analysis of the cases, concluded that the phrase "without just cause" is "vague and indefinite and incapable of judicial or lay construction in a statute of this type." It held that the statute under consideration "says all things to all men * * * without granting to the prospective defendant his constitutional *283 right to be fairly apprised of the elements constituting a quasi-criminal infraction."
Thus in Kohn and Kinney we have two judges of the County Court, in the same County, reaching diametrically opposed conclusions. Certainly, the plaintiff here is entitled to a declaratory judgment.
Judge Goldmann, speaking for the Appellate Division in Mountain Lakes Bd. of Education v. Maas, 56 N.J. Super. 245 (App. Div. 1959), affirmed 31 N.J. 537 (1960), at page 259 puts the plaintiff's burden in this type case in sharp focus.
"Basically, the constitutionality of a statute, ordinance or regulation is open to attack only by a person whose rights are adversely affected. The burden of proof is upon the individual who claims himself harmed to show how, as to him, the statute is unconstitutional. Jones v. [City of] Opelika, 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691, 141 A.L.R. 514 (1942). No one can obtain a decision as to the invalidity of a law on the ground that it impairs the rights of others; such a one `is not the champion of any rights except his own.' 11 Am. Jur., Constitutional Law § 111, pp. 752-753 (1937), and see notes 13 and 14. * * *"
The factual problem here involved is the indiscriminate sale of contraceptives to anyone who puts a coin in the machine; whether it be a teenager, a procurer or a married person. The factual problem does not include any question about the privilege of contraception between husband and wife; about religious belief; nor planned parenthood; nor prevention of disease.
It, of course, is true, as suggested in one of the three reported opinions, that one's life is colored by his "social, religious, economic and environmental orientation." It is true, too, that attacks upon the type of legislation here under review are frequently attended by strong feeling or religious creed. For a view that this type of legislation "may unjustifiably increase hostility among citizens of different religious beliefs and moral codes," see "The Connecticut Birth Control Ban And Public Morals," by Richard *284 J. Regan, S.J., 7 The Catholic Lawyer, p. 5 (1961). In that article Father Regan states, "not every legislative prescription of public morals within the power of a state is a wise exercise of that power." However, the wisdom of the legislation is not in issue here.
The Legislature has exercised its legislative function in enacting this statute. The rules by which it is to be tested are well known:
1. There is a strong presumption that a statute is constitutional. Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 388 (1959). And, as a corollary, if any interpretation of the statute will lead to the conclusion that the statute is valid and constitutional, it is the duty of the court to so find. Lynch v. Borough of Edgewater, 8 N.J. 279, 290-1 (1951).
2. It is clearly within the police power to regulate the dispensation of contraceptives. State v. Kinney Bldg. Drug Stores, Inc., 56 N.J. Super. 37, 40 (Cty. Ct. 1959); Buxton v. Ullman, 147 Conn. 48, 156 A.2d 508 (Sup. Ct. Err. 1959); Cavalier Vending Corp. v. State Board of Pharmacy, 195 Va. 626, 79 S.E.2d 636 (Sup. Ct. App. 1954); United States v. One Package, 86 F.2d 737 (2 Cir. 1936). The State may regulate for the furtherance of public decency and morals. Buxton v. Ullman, supra; Cavalier Vending Corp. v. State Board of Pharmacy, supra. In fact, it appears to be conceded for this case that under the police power the State may bar the sale of contraceptives completely, or may provide for their dispensation through physicians.
3. Where the court is called upon to construe a statute, its function is to seek and carry out the Legislature's purpose as is fairly expressed in its language. Watson v. United States Rubber Co., 24 N.J. 598, 603 (1957).
4. A penal statute must specify the elements of the offense which it proscribes with such a reasonable degree of certainty as to apprise those to whom it is addressed of the standard of conduct proscribed, so that men of common *285 intelligence need not necessarily guess at its meaning or differ as to its application. State v. Joas, 34 N.J. 179, 185 (1961).
Joas involved the construction of N.J.S.A. 39:4-97, which provides:
"A person who drives a vehicle on a highway carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving."
In construing the language, the court said, at page 185:
"In judging the sufficiency of the language employed in a penal statute it is necessary to give consideration to the latitude of the field encompassed and the consequent impracticability of rigid legislative criteria. As stated in State v. Frankel, supra, 42 N.J. Super., at page 11:
`* * * It is, however, common to find regulatory penal statutes or ordinances which are necessarily couched in terms of fairly broad scope because of the peculiar nature of the subject matter in question.'"
See also State v. Hudson County News Co., 35 N.J. 284, 297-298 (1961), wherein the Supreme Court held "that what is required is that statutory language convey sufficient warning when measured by common understanding; and that although there may be marginal cases where it is difficult to determine the side of the line on which a particular situation falls, that is insufficient reason for holding the statutory language to be too ambiguous [citing cases]." The accepted method of determining the meaning of a statute is to look at the mischief to be remedied and the means taken to achieve that end.
The statute when first enacted in New Jersey (L. 1869, p. 1115) was unqualified in its terms and undoubtedly was, as suggested in Tracy, enacted as part of a nationwide movement. Cf. Lanteen Laboratories Inc. v. Clark, 294 Ill. App. 81, 13 N.E.2d 678 (App. Ct. 1938). Since *286 the language of the original act was clear, no question arose as to its meaning.
The words "without just cause" were introduced into our statute in 1877 (Revision of 1877, p. 234, § 44). Obviously, the statute was changed from an unqualified to a qualified one. It is clear the Legislature had in mind some instances in which possession or sale of these instruments, medicines or other objects might well be justified medically. The Legislature was not required to list every situation which it deemed to be with or without just cause. This being so, and because the conduct intended to be prohibited was not fairly susceptible of definition in other than general language, the Legislature properly used the general language.
It is for this reason and for the reasons stated in the decisions that the court finds compelling the reasoning in Tracy and Kohn that the words "without just cause" make provision "[for] cases of `proper medical care' and the like." The court in Kohn, at pages 584, 585, cites cases using such general language either identical or comparable to "without just cause"; as also does the court in State v. Hudson County News Co., 35 N.J. 284 (1961), at pages 295, 296.
In Hudson County News, N.J.S. 2A:115-2 was under attack as being "too vague on its face and therefore violative of due process requirements." That statute provides, in part, that no person shall "without just cause" possess, with intent to utter and expose to the view of others, etc., obscene and indecent literature or pictures. The court held, at page 297:
"* * * In the light of its contextual purpose and common understanding we consider the exception to be reasonably certain and fairly informative; it properly protects those who may possess and distribute obscene material in the course of bona fide scientific, medical or comparable research or study or in the course of law enforcement activities or in other like circumstances where the nature of the possession and distribution is not related to the appeal to prurient interest. * * *"
*287 It seems to this court that on the same reasoning the present statute properly protects those who may use the prohibited articles for medical reasons.
Reading N.J.S. 2A:87-1, which makes it a crime for "any person who, maliciously or without lawful justification" (emphasis added) intentionally performs an abortion, in pari materia with N.J.S. 2A:170-76, and N.J.S.A. 45:9-16, leads the court to the conclusion that some abortions are said to be with lawful justification, in New Jersey and permissible. The court is aware that therapeutic abortions are performed in New Jersey hospitals on certification of doctors and that prosecution has not ensued in these cases. Unfortunately, statistical data on the number is unavailable. Nor has a case ever arisen in the long history of the statutory enactment over the sale of contraceptive devices or instruments designed for the procuring of an abortion except in Tracy, Kohn and Kinney, where indiscriminate sales, either by machine or with no questions asked, were at issue. All three were decided within the last eight years.
The court recognizes that there may be marginal cases, but the rule there to be applied is stated in State v. Monteleone, 36 N.J. 93, 99 (1961):
"That there may be marginal cases in which it is difficult to determine the side on which a particular fact situation may fall, furnishes insufficient reason to hold the language of a penal statute too vague or uncertain. State v. New York Central Railroad Co., 37 N.J. Super. 42 (App. Div. 1955). If a statute is reasonably appropriate in its overall approach, it should be upheld notwithstanding that it may be invalid in its application in special circumstances or fringe areas. Sayreville v. Pennsylvania R.R. Co., 26 N.J. 197 (1958); Two Guys from Harrison, Inc. v. Furman, supra. We conclude that N.J.S. 2A:171-58 does not violate the State or Federal Constitutions for vagueness or lack of clarity."
The court finds the statute here under consideration, N.J.S. 2A:170-76, is a valid legislative enactment. The defendants will not be enjoined from proceeding with the filing of any complaints in the courts of the State of New *288 Jersey against the plaintiff or others similarly situated, charging them with violations of N.J.S. 2A:170-76. The court further finds that under authority of State v. Tracy, supra, and upon proper complaints, the plaintiff would be in violation of the statute.