40 N.J. 157 (1963)
190 A.2d 876
SANITARY VENDORS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
BRENDAN T. BYRNE, PROSECUTOR OF ESSEX COUNTY, ET AL., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued March 18, 1963.
Decided May 6, 1963.
*159 Mr. David Schechner argued the cause for the appellant.
Mr. John J. Bergin, Assistant Attorney General, argued the cause for the respondents (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Evan William Jahos, on the brief).
The opinion of the court was delivered by JACOBS, J.
The plaintiff filed a complaint in the Law Division seeking a declaration that N.J.S. 2A:170-76 is unconstitutional and other relief. From an adverse judgment it appealed to the Appellate Division and we certified before argument there.
The plaintiff is engaged in the automatic vending machine business and from time to time has installed its machines at various locations throughout the State. The machines deliver packages of prophylactics (condoms) to persons who deposit designated coinage. Most of the machines have been located at gasoline stations and diners. Beginning in 1951 and continuing thereafter, various law enforcement officials at State, county and local levels, have either confiscated the machines or have threatened arrests if the machines were not removed. The officials acted under N.J.S. 2A:170-76 which provides, in pertinent part, that any person who, without just cause, utters or exposes to the view of another, or possesses with intent to utter or expose to the view of another, or to sell the same, any instrument, medicine or other thing designed for the prevention of conception, is a disorderly person. The plaintiff's contention is that the use of the words "without just cause" renders the statute so vague as to make it void under the United States and New Jersey Constitutions. See State v. Kinney Bldg. Drug Stores, Inc., 56 N.J. Super. 37 (Essex Cty. Ct. 1959). But cf. State v. Tracy, 29 N.J. Super. 145 (App. Div. 1953), certif. denied 15 N.J. 79 (1954); State v. Kohn, 42 N.J. Super. 578 (Essex Cty. Ct. 1956); cf. also State v. Hudson County News Co., 35 N.J. 284 (1961). In the Law Division, Judge Waugh rejected the *160 plaintiff's contention and took the position that the quoted phrase makes suitable provision for cases of proper medical care and the like. Sanitary Vendors, Inc. v. Byrne, 72 N.J. Super. 276, 286 (Law Div. 1962). He expressed no doubt that the indiscriminate distribution of contraceptives through vending machines was in violation of the terms and purposes of the statute. 72 N.J. Super., at pp. 283, 287.
The history of our legislation dealing with contraceptives may be referred to for whatever light it sheds as to the scope and meaning of the current enactment. An 1869 statute dealing with obscenity made it a punishable offense to sell or give away any article or medicine for the prevention of conception. L. 1869, c. 440, p. 1115. Similarly, an 1873 statute made it unlawful to sell or give away an article of medicine for the prevention of conception but it contained an express declaration that nothing therein shall render it unlawful for a physician to prescribe any medicine he may judge to be useful and proper. L. 1873, c. 408, p. 77. In the same year the United States Congress passed the well-known Comstock Act. 17 Stat. 598; see 18 U.S.C.A. §§ 1461, 1462. That statute declared as nonmailable, every article or thing designed or intended for preventing conception. Though it was absolute in terms, pertinent exceptions were declared in the course of its interpretation by the federal courts. See Youngs Rubber Corporation v. C.I. Lee & Co., 45 F.2d 103 (2 Cir. 1930); Davis v. United States, 62 F.2d 473 (6 Cir. 1933); United States v. One Package, 86 F.2d 737 (2 Cir. 1936); United States v. Nicholas, 97 F.2d 510 (2 Cir. 1938); Consumers Union of the United States v. Walker, 79 U.S. App. D.C. 229, 145 F.2d 33 (D.C. Cir. 1944); United States v. H.L. Blake Company, 189 F. Supp. 930 (W.D. Ark. 1960). See Stone and Pilpel, "The Social and Legal Status of Contraception," 22 N.C.L. Rev. 212, 221 (1944); Note, "Contraceptives and the Law," 6 U. Chi. L. Rev. 260, 264 (1939).
In Youngs Rubber, supra, the court noted that the intent to prevent a proper medical use of drugs or other articles merely because they are capable of illegal use is "not lightly *161 to be ascribed to Congress" and that the terms of the statute should be read so as to require an intent on the part of the sender that the articles mailed "be used for illegal contraception." 45 F.2d, at p. 108. In the Nicholas case Judge Learned Hand referred to Youngs Rubber as holding that since contraceptive articles may have lawful uses, statutes prohibiting them should be read "as forbidding them only when unlawfully employed." 97 F.2d, at p. 512. In the states, permissible modes of sale of contraceptives have often been specifically enumerated. See Note, "Some Legislative Aspects of the Birth-Control Problem," 45 Harv. L. Rev. 723 (1932); Hudson, "Birth Control Legislation," 9 Clev.-Mar. L. Rev. 245, 255-256 (1960). In City of Toledo v. Kohlhofer, 96 Ohio App. 355, 122 N.E.2d 20 (1954), the court dealt with a Toledo ordinance which prohibited the sale of contraceptive devices but made an exception in favor of physicians and druggists in their legitimate business. See McConnell v. Knoxville, 172 Tenn. 190, 110 S.W.2d 478, 113 A.L.R. 966 (1937). In holding that a prosecution under the ordinance could not be successfully maintained in the absence of a showing of knowledge by the seller that the contraceptive was to be used for "an unlawful purpose," 122 N.E.2d, at p. 26, the court relied specifically on the federal decisions. See also Commonwealth v. Corbett, 307 Mass. 7, 29 N.E.2d 151 (1940); cf. State v. Arnold, 217 Wis. 340, 258 N.W. 843, 846 (1935), where the court suggested that the seller's unlawful purpose could readily be inferred from the sale of contraceptives via a vending machine in a public place. See State v. Kohn, supra, 42 N.J. Super., at p. 586.
The terms of L. 1873, c. 408 were embodied in sections 45 and 49 of the 1874 revision of the act for the punishment of crimes; in addition, that revision set forth in section 44 that if any person without just cause shall utter or expose any thing designed for the prevention of conception, he shall be subject to fine or imprisonment. The revision of 1898 deleted sections 45 and 49 and section 44 became section 53. See L. 1898, c. 235, p. 808. Section 53 was subdivided in the revision *162 of 1937. The provision against the sale without just cause of contraceptives (and abortifacients) became R.S. 2:105-3 and the provision against the sale without just cause of obscene books and pictures became R.S. 2:140-2. In the latest revision, effective January 1, 1952, R.S. 2:105-3 was designated as a disorderly offense rather than a crime; it became N.J.S. 2A:170-76 and R.S. 2:140-2 became N.J.S. 2A:115-2.
In State v. Hudson County News Co., supra, the "without just cause" clause in N.J.S. 2A:115-2 was attacked as too vague to satisfy constitutional requirements. We rejected the attack in an opinion which found the clause to be reasonably certain and fairly informative in the light of its contextual purpose and common understanding; it was found to protect "those who may possess and distribute obscene material in the course of bona fide scientific, medical or comparable research or study or in the course of law enforcement activities or in other like circumstances where the nature of the possession and distribution is not related to the appeal to prurient interest." See 35 N.J., at p. 297. We recognize that our definition of the clause in the context of N.J.S. 2A:115-2 has little relation to the proper definition of the clause in the context of N.J.S. 2A:170-76. Nevertheless the Hudson County News Co. case is significant here for it serves to illustrate the traditional course of judicial interpretation which strains to give reasonable definiteness to general legislative standards and thereby avoid constitutional challenge. See United States v. Harriss, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954); Screws v. United States, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495, 1500 (1945); Note, "The Void-For-Vagueness Doctrine in the Supreme Court," 109 U. Pa. L. Rev. 67 (1960); cf. Collings, "Unconstitutional Uncertainty  An Appraisal," 40 Cornell L.Q. 195, 223 (1955); Proprietary Ass'n v. Board of Pharmacy of N.J., 16 N.J. 62 (1954).
The first case which dealt specially with N.J.S. 2A:170-76 was State v. Tracy, supra, decided in 1953. There the defendant *163 was the owner of automatic vending machines which dispensed prophylactics. He was convicted in the municipal court and appealed to the Appellate Division which affirmed his conviction. The defendant raised no question with respect to the meaning and validity of the "without just cause" clause. Perhaps he recognized that no plausable interpretation of the clause would apply to him, that his was not a marginal situation, and that he was hardly in any position to assert the rights of others who might be adversely affected by the generality of the clause. See United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960); United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 168, 74 L.Ed. 508, 510 (1930); State v. Monteleone, 36 N.J. 93, 99 (1961); State v. Segal, 78 N.J. Super. 273, 280 (App. Div. 1963); Sedler, "Standing to Assert Constitutional Jus Tertii," 71 Yale L.J. 599 (1962).
The issues raised by the defendant in Tracy and discussed in the Appellate Division's opinion should be considered in the light of State v. Kohn, supra, where a wholesale rubber goods dealer and his employee were convicted in the municipal court on the basis of their sale of condoms to a detective. The defendants appealed and attacked N.J.S. 2A:170-76 as invalid by reason of its vagueness. Their attack failed and the statute was upheld in an opinion which referred extensively to the federal decisions and suggested that when the Legislature enacted N.J.S. 2A:170-76 it meant to equate the "without just cause" clause with those decisions. It pointed out that in Tracy the defendant, whose distribution through vending machines was necessarily indiscriminate, could not be in any position to assert just cause, whereas the physician and the druggist, as well as the jobber who sells to them, could be in such position. The court expressed the view that the presence of the clause indicated that the intent of the possessor "was an important issue and a major subject of proof" (cf. State v. Hudson County News Co., supra, 35 N.J., at p. 294); in this connection it may be noted that under our cases the burden of negating just cause *164 would rest upon the State. See Town of West Orange v. Jordan Corp., 52 N.J. Super. 533, 547-549 (Essex Cty. Ct. 1958); State v. Lee, 100 N.J.L. 201 (Sup. Ct. 1924); cf. State v. Chenoweth, 226 Iowa 217, 284 N.W. 110 (1939); cf. also Williams v. United States, 78 U.S. App. D.C. 147, 138 F.2d 81, 153 A.L.R. 1213 (D.C. Cir. 1943).
In State v. Kinney Bldg. Drug Stores, Inc., supra, a registered pharmacist and his assistant, without making inquiries, sold prophylactics to detectives in the employ of the Newark Police Department. They were convicted in the municipal court for violation of N.J.S. 2A:170-76 and appealed to the Essex County Court where they moved to dismiss on the ground that the statute was unconstitutional. Their motion was granted upon the court's holding that the "without just cause" clause was too vague and was incapable of judicial construction. The court considered that application of the clause might entail inquiry in each case as to the personal and moral justifications for the practice of birth control by the individuals concerned. Thus it suggested that the decision might hinge "upon the social, religious, economic, and environmental orientation of the individual," that one court might hold a married couple could prevent conception for any reason whatsoever whereas another court might hold otherwise, and that one court might consider spacing of birth, extreme poverty and possible childbirth death to be just cause whereas another court might hold otherwise. See 56 N.J. Super., at p. 43. If application of the clause entailed the foregoing course with its intolerable intrusions into most private realms, we would readily approve the holding of unconstitutionality. We are satisfied, however, that the Legislature never contemplated any such course and that the statute may now be construed to avoid it while at the same time giving its terms fair meaning and effect. See United States v. Harriss, supra; Screws v. United States, supra; Daly v. Daly, 21 N.J. 599, 604 (1956); Woodhouse v. Woodhouse, 17 N.J. 409, 416 (1955).
*165 We believe, as did the court in State v. Kohn, supra, that when the Legislature enacted N.J.S. 2A:170-76 it did so with full recognition of the federal decisions. Those decisions spoke not in terms of personal morality but in terms of lawfulness and legality. They took the position that the congressional prohibition was aimed at illegal contraception. Similarly we believe that our legislation may fairly be taken to have been aimed at illegality. New Jersey does not have any statute which seeks to declare the use of contraceptives to be illegal (cf. Buxton v. Ullman, 147 Conn. 48, 156 A.2d 508 (1959), appeal dismissed sub nom. Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)), but it does have statutes which declare extramarital intercourse within its borders to be illegal. N.J.S. 2A:110-1; N.J.S. 2A:88-1. With that in mind, the Legislature intended merely to regulate rather than prohibit the sale of contraceptives in our State; that is made sufficiently evident by the presence of the "without just cause" clause in N.J.S. 2A:170-76. The power to regulate was not questioned before us by the plaintiff, and indeed at oral argument it conceded that the explicit exclusion of vending machines selling prophylactics would be within the State's police power. Cf. Henkin, "Morals and The Constitution: The Sin of Obscenity," 63 Colum. L. Rev. 391 (1963); Schwartz, "Morals Offenses and The Model Penal Code," 63 Colum. L. Rev. 669 (1963).
Most people in our State would find the promiscuous and indiscriminate sale of contraceptives through vending machines in public places to be offensive and there is no reason to question that when the Legislature enacted N.J.S. 2A:170-76 it did not contemplate that such mode of sale would be permissible. Indeed, it would not only offend sensibilities but would also remove all measure of control aimed at avoiding sales to the very young or in other circumstances evidencing intended use incident to illegal conduct. The plaintiff's complaint, as supplemented by its stipulation of facts, discloses that both before and after N.J.S. 2A:170-76 *166 took effect in 1952, the Attorney General and other law enforcement officers acted openly and widely upon the general understanding that it was illegal to sell contraceptives through vending machines. It is safe to say that the exclusion of such machines comports fully with legislative intent in the enactment of N.J.S. 2A:170-76. While perhaps no more need strictly be determined here, we find nothing whatever in the statute which suggests any legislative intent to exclude the customary and familiar dispensations by physicians and sales by druggists in the regular course of business, absent special circumstances indicating knowledge by the dispenser or seller of intended use incident to illegal conduct within the State. Cf. Commonwealth v. Corbett, supra, 29 N.E.2d, at pp. 153-155. This approach presents no constitutional problem of vagueness (Fox v. State of Washington, 236 U.S. 273, 277, 35 S.Ct. 383, 384, 59 L.Ed. 573, 575 (1915)) and under it the dismissal in State v. Kinney Bldg. Drug Stores, Inc., supra, was properly directed although the holding of unconstitutionality was unsound.
The ultimate policy as to the manner of regulating the sale of contraceptives within the State rests with the Legislature rather than the courts. It may readily set forth its wishes in specific detail and have them enforced, subject to constitutional limitations. It has not done so but has deliberately used general language with the knowledge that the courts will from time to time be called upon for its definition and application. Where, as here, the definition is given in a declaratory judgment proceeding involving a nonmarginal situation, the public interest is well served, since issues of constitutionality are avoided, considerations of fairness are not violated, and the Legislature remains free to take action if it considers that the judicial definition does not express its purposes. More troublesome is a proceeding where, after accusation in a marginal situation, judicial definition is sought for purposes of retroactive application. Since that case does not confront us, we need not deal with it other than to caution again that legislation should always give fair warning *167 to those affected as to what it intends to outlaw. There is, of course, no suggestion that the plaintiff in the instant case lacked warning that its activity was proscribed. We are satisfied that the judgment entered below was correct and it is accordingly:
Affirmed.
For affirmance  Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  6.
For reversal  None.